**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| HENRI CALDERON-RODRIGUEZ, *Petitioner*, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, *Respondent*. | No. 16-70225 <br><br> Agency No. A205-273-112 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 4, 2017
Pasadena, California

Filed January 3, 2018

Before: A. Wallace Tashima and Marsha S. Berzon,
Circuit Judges, and Matthew F. Kennelly,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Henri Calderon-Rodriguez's petition for review of the Board of Immigration Appeals' decision, concluding that the Board in two related ways abused its discretion in affirming the IJ's competence evaluation and determination.

First, the Board affirmed the IJ's inaccurate factual findings, failing to recognize that the medical record upon which the IJ and Board heavily relied was nearly a year old, and that it may have no longer reflected Calderon's mental state.

Second, the Board affirmed the IJ's departure from the standards set out by the Board for competency determinations in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011). Specifically, the panel concluded that the IJ did not adequately ensure that the Department of Homeland Security complied with its obligation to provide the court with relevant materials in its possession that would inform the court about Calderon's mental competency. In this respect, the panel noted that, importantly, neither the IJ nor the Board recognized that, as DHS was providing ongoing medical care to Calderon as a detainee, it necessarily possessed additional relevant, but not introduced, medical records.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel remanded to the Board with instructions to remand Calderon's case to the IJ for a competence evaluation based on current mental health reviews and medical records, as well as any other relevant evidence.

## COUNSEL

Taiyyeba S. Skomra (argued), Helen A. Sklar, and Amy P. Lenhert, Stone Grzegorek & Gonzalez, LLP, Los Angeles, California, for Petitioner.

Sarah Byrd (argued), Trial Attorney; Chad A. Readler, Acting Assistant Attorney General; Linda S. Wernery, Assistant Director; Office of Immigration Litigation, Washington, D.C.; for Respondent.

## OPINION

BERZON, Circuit Judge:

This case concerns an individual's right to a competence evaluation if there are indicia of his or her incompetence present during immigration proceedings. In particular, we consider the Department of Homeland Security's ("DHS") obligation to provide the Immigration Judge ("IJ") with relevant evidence with regard to that individual's competence.

## I.

Petitioner Henri Calderon-Rodriguez ("Calderon"), who has been detained since 2012, petitions for review of the

Board of Immigration Appeal's ("BIA") dismissal of his appeal, arguing that his competence was inappropriately and incompletely evaluated by his IJ. We agree.

In 2012, Calderon applied for cancellation of removal and several other forms of relief. Two months before his merits hearing in 2013, DHS filed a document informing the IJ that Calderon might be a member of a class of detained, unrepresented, possibly incompetent individuals in immigration proceedings, potentially affected by ongoing proceedings in *Franco-Gonzalez v. Holder*, No. 10-02211 (C.D. Cal.).

The filing noted that Calderon was in detention and had been diagnosed with "Post-Traumatic Stress Disorder and Depression – Not Otherwise Specified." Neither the government nor Calderon's counsel addressed the filing during Calderon's merits hearing. The IJ denied Calderon's request for relief, and the BIA dismissed Calderon's appeal. After a petition for review was filed in this court, the Attorney General requested that we remand the case to the BIA for consideration of the competence question. The BIA, in turn, remanded "to permit the Immigration Judge to make explicit findings of fact and conclusions of law concerning the respondent's mental competency. . . ."

On remand, a hearing was held in June 2015. After the hearing, the IJ found Calderon competent and denied his applications for relief. In doing so, the IJ relied on her "observation of and interaction with" Calderon "at multiple hearings over several years"; Calderon's ability to seek legal assistance; his collection and introduction of evidence and testimony; and the content of his testimony, which the IJ found credible. The IJ also relied heavily on a mental health

review submitted by DHS, which stated that Calderon was "currently . . . managing anxiety overall well," had "[n]o active PTSD [symptoms]," although he "historically had more significant problems," and had "some situational depression and sleep disturbance." The IJ called the document "an updated mental health review," and stated that the review was "dated July 24, 2015." In fact, the document was dated July 24, 2014, almost a year before the hearing.

In addition, the IJ noted that Calderon submitted current "patient medication information," and briefly asked him about it, but did not evaluate that information in more detail. Several medications in that current list were either not identified as prescribed, or were identified at lower dosages, in the 2014 mental health review submitted by DHS.

Calderon appealed the IJ's ruling to the BIA. In his brief, he did not mention his competence. Instead, Calderon submitted a "Request for Correction of Transcrip," [*sic*], in which he argued that there was "a lot information missing in the court proceeding," like when he "advise the Immigration Judge . . . I not feeling good I start to feeling very uncomfortable, hot and sweat the I.J. don't care. . . . I start goin in crisis or breakdown." He also said,

> After court I go back to my pad I can not control my self at the pad I go with the psychologic and then I finis in the Room under "Suicide Watch." Few days later or a month later I asking my Doctor of menthal health . . . if is true that the immigration judge . . . call her and asking for my menthal health. The Doctor sayin that she never receive any call. . . .

He wrote, "Now I want know why the I.J. put on risk my life and menthal health."

The BIA found no clear error in the IJ's competence determination and adopted it. Calderon petitioned for review.

II.

A.

The Immigration and Nationality Act ("INA") requires that, "[i]f it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien," 8 U.S.C. § 1229a(b)(3) (INA § 240(b)(3)). Several regulations flesh out these "safeguards." *See* 8 C.F.R. §§ 103.8(c)(2)(ii), 1240.4, 1240.10(c). But neither the INA nor the regulations specify how to decide whether an individual is incompetent, or how to proceed if an individual is incompetent but it is *not* impracticable for him or her to be present.

In *Matter of M-A-M-*, 25 I&N Dec. 474 (BIA 2011), the BIA filled in some of the gaps in the INA. Drawing on the general due process principles for assuring competence in criminal proceedings, as articulated in *Drope v. Missouri*, 420 U.S. 162, 171 (1975), as well as on INA-provided rights to be represented and present evidence, the BIA established that:

> [T]he test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and

> object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.

*Matter of M-A-M-*, 25 I&N Dec. at 479. Under *Matter of M-A-M-*, if there are indicia of incompetence—which may "include a wide variety of observations and evidence," ranging from "medical reports or assessments from past medical treatment" to "school records" and "testimony from friends," *id.* at 479–80—"the Immigration Judge must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings," *id.* at 484. *See Mejia v. Sessions*, 868 F.3d 1118, 1121–22 (9th Cir. 2017) (holding that the indicia of incompetence required the IJ in that case "to explain whether Petitioner was competent and whether procedural safeguards were needed").

While "[t]he approach taken in any particular case will vary based on the circumstances," IJs "must take measures" to assess an individual's competence when there are indicia of incompetence, such as questioning the individual simply, continuing proceedings to allow for evidence gathering, allowing assistance from friends and family, asking the individual about his or her psychiatric medication and its purpose and effects, and arranging for a psychiatric evaluation. *Matter of M-A-M-*, 25 I&N Dec. at 480–81; *see also Matter of J-S-S-*, 26 I&N Dec. 679, 681–84 (BIA 2015) (describing IJs' responsibilities in, and standards of proof for, determining competence). Most relevant here, "DHS will often be in possession of relevant evidence, particularly where the alien is detained. The DHS has an obligation to provide the court with relevant materials in its possession that

would inform the court about the respondent's mental competency." *Matter of M-A-M-*, 25 I&N Dec. at 480 (citing 8 C.F.R. § 1240.2(a); *Matter of S-M-J-*, 21 I&N Dec. 722, 726–27 (BIA 1997)).

## B.

In Calderon's case, the BIA in two related ways abused its discretion in affirming the IJ's competence evaluation and determination.[1]

First, the BIA affirmed the IJ's inaccurate factual finding about the mental health evidence in the record. Neither the IJ nor the BIA recognized that the medical record upon which they heavily relied was nearly a year old, and that it may have no longer reflected Calderon's mental state. Instead, the IJ referred to the medical record as an "updated" reflection of Calderon's present mental health condition, and stated that the record showed that Calderon "*[p]resently* . . . is not exhibiting any active PTSD symptoms, suicide ideation, hallucinations, or psychosis" (emphasis added). Those findings as to Calderon's condition at the time of the hearing were not supported by the year-old date on the mental health record. As these critical factual findings were made "without 'support in inferences that may be drawn from the facts in the record,'" *Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 577 (1985) and citing *United States v. Hinkson*, 585 F.3d 1247,

---

[1] The Attorney General recognizes that there is no exhaustion problem regarding the competence claim. The BIA addressed the merits of the IJ's competence determination, so we "cannot . . . decline to consider the issue based upon [an alleged] procedural defect." *Abebe v. Gonzales*, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc).

1262 (9th Cir. 2009) (*en banc*)), they constituted an abuse of discretion.

Second, the BIA abused its discretion by affirming the IJ's departure from the standards set forth in *Matter of M-A-M-*, 25 I&N Dec. at 480–81. *See Mejia*, 868 F.3d at 1121. While the IJ did "take" at least some "measures" to determine whether Calderon was competent, *Matter of M-A-M-*, 25 I&N Dec. at 480, she did not adequately ensure that DHS complied with its "obligation to provide the court with relevant materials in its possession that would inform the court about the respondent's mental competency," as required by *Matter of M-A-M-*. *Id.*

Importantly, neither the IJ nor the BIA recognized that, as DHS was providing ongoing medical care to Calderon as a detainee, it necessarily possessed additional relevant, but not introduced, medical records. There were, indeed, specific indications that there were later medical records not provided to the IJ or the BIA that could have reflected a deterioration in Calderon's condition.

First, the mental health review in 2014 indicated that Calderon would have a follow-up appointment, but no medical records were submitted to the IJ regarding that appointment or any later ones. Second, Calderon submitted a list of his current medications that differed in type and dosage from those described in the 2014 review. The change in medication could have reflected a change in Calderon's mental state, or the change could have itself affected Calderon's mental state due to potential side effects; at a minimum, the change confirmed that there were more recent medical treatment records than the year-old one. And third, Calderon's pro se submission to the BIA included a

complaint that his treating doctor was not asked for current information about his condition.

As the Attorney General notes, "there are many types of mental illness that, even though serious, would not prevent a respondent from meaningfully participating in immigration proceedings." *Matter of M-A-M-*, 25 I&N Dec. at 480. But, by not assuring that DHS had provided Calderon's most recent medical records, diagnoses, and prescriptions, the IJ was unable to evaluate whether Calderon's current mental illness prevented him from meaningfully participating in his June 2015 immigration proceedings, and so violated "*M-A-M-*'s rigorous procedural requirements." *Mejia*, 868 F.3d at 1122. The IJ therefore erred, and the BIA abused its discretion in affirming the IJ's decision.**[2]**

## C.

Calderon also argues that his waiver of counsel was not knowing and voluntary. Whether Calderon was competent may well affect that inquiry. We therefore do not address the waiver of counsel argument at this juncture.

Calderon also makes an equal protection argument concerning the impact of his alcoholism on the grounds for denying relief from removal. His argument relies on

---

**[2]** We note that, as Calderon argues, DHS may have violated an order implementing the permanent injunction in *Franco-Gonzalez* by failing to provide Calderon's updated mental health information to the IJ and BIA. *See Franco-Gonzalez v. Holder*, No. 10-02211, Dkt. No. 786 (C.D. Cal. October 29, 2014). However, because Calderon's complete mental health information was not introduced into the record, we are unable to determine if Calderon was a member of the *Franco-Gonzalez* class, *see id.* at 6–7, and thus cannot determine if the order was violated.

*Ledezma-Cosino v. Lynch*, 819 F.3d 1070 (9th Cir. 2016), a decision overruled by *Ledezma-Cosino v. Sessions*, 857 F.3d 1042 (9th Cir. 2017) (en banc).  The equal protection argument therefore fails.

## III.

The petition is **GRANTED.**  The case is **REMANDED** to the Board of Immigration Appeals with instructions to remand Calderon's case to the Immigration Judge for a competence evaluation based on current mental health reviews and medical records, as well as any other relevant evidence.