**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BISTERMU S. MORA SALGADO,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,
*Respondent*.

No. 14-71890

Agency No.
A092-406-486

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 8, 2018[*]
Pasadena, California

Filed May 8, 2018

Before: Ronald M. Gould and Mary H. Murguia, Circuit
Judges, and Jack Zouhary,[**] District Judge.

Opinion by Judge Gould

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[***]

### Immigration

The panel denied Bistermu Mora Salgado's petition for review of a decision of the Board of Immigration Appeals, holding that Salgado's complaints of poor memory, without evidence of an inability to understand the nature and object of the proceedings, were insufficient to show mental incompetency.

At Salgado's final hearing before an Immigration Judge, he claimed that he had recently been in a small car accident that was causing him memory loss. The IJ denied Salgado's motion to continue the hearing for a medical exam, concluding that he was competent to testify, and the BIA affirmed.

The panel observed that the standard for mental incompetency as set by the BIA in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011), and endorsed by this court in *Calderon-Rodriguez v. Sessions*, 878 F.3d 1179 (9th Cir. 2018), and *Mejia v. Sessions*, 868 F.3d 1118 (9th Cir. 2017), is a stringent one. Under that standard, to demonstrate mental incompetency, a person must show some inability to comprehend or to assist and participate in the proceedings, some inability to consult with or assist their counsel or their representative if pro se, and lack of a reasonable opportunity to present evidence and examine witnesses, including cross-examination of opposing witnesses. The mere inability to

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

recall some events, a common weakness, and other similar mental lapses, are not sufficient to show mental incompetency.

In this case, the panel observed that there was no evidence that Salgado did not comprehend the nature and object of the proceedings. He was represented by counsel, and there was no evidence that he was unable meaningfully to assist counsel's defense efforts. The panel further concluded that any memory loss Salgado may have experienced did not prejudice his immigration proceedings, because his application, not his poor memory, was the basis for the IJ's denial of cancellation of removal. Accordingly, the panel concluded that the IJ did not err by denying a continuance, and that the BIA was correct to conclude that Salgado did not show indicia of incompetency.

**COUNSEL**

Pieter D. Speyer, La Jolla, California, for Petitioner.

Lindsay M. Murphy, Trial Attorney; Keith I. McManus, Senior Litigation Counsel; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

GOULD, Circuit Judge:

Petitioner Bistermu Mora Salgado (Salgado) is a lawful permanent resident of the United States who emigrated from Mexico in 1981. Salgado has lived and worked in the United States off and on since 1981. His wife also lives in the United States, and is not a U.S. citizen, but his two sons are citizens. In 2006, Salgado attempted to smuggle a friend's child into the United States by storing the child under the back seat of his vehicle as he crossed the border with his two sons. U.S. Customs and Border Protection found the stowaway child, detained Salgado, and released Salgado's children. Salgado confessed to the crime of smuggling, making him eligible for removal, but argued that he was eligible for cancellation of removal. Salgado's removal proceedings have been pending since 2006 because of a series of continuances and changes of venue. During this period of time from 2006 to the present, Salgado continued to work in the United States and paid to have his wife and her son smuggled into the United States.

In 2013, there was finally a merits hearing in Salgado's case. At that hearing, Salgado claimed that he had been involved in a small car accident a week before that was causing him memory loss. The Immigration Judge (IJ) denied counsel's motion to continue the hearing for Salgado to undergo a medical exam. Salgado gave unclear testimony about his U.S. addresses and prior convictions, but the IJ did not make an adverse credibility finding. The IJ rendered an oral decision finding Salgado ineligible for relief because the negatives of Salgado's application, including prior arrests and convictions, participation in smuggling, and lack of significant ties to the United States, outweighed the positives, such as his work and length of residence in the

United States. A three-judge panel of the Board of Immigration Appeals (BIA) affirmed the IJ's decision, concluding that the IJ's mental competency assessment was not in error and that the IJ correctly exercised his discretion to deny Salgado relief.

Salgado argues on appeal that the IJ erred by finding him competent to testify at the hearing. We hold that Salgado's complaints of poor memory, without evidence of an inability to understand the nature and object of the proceedings, are insufficient to show mental incompetency. We further conclude that any memory loss Salgado may have experienced did not prejudice his immigration proceedings, because his application, not his poor memory, was the basis for the IJ's denial of cancellation of removal.

# I

## A

After seven years of continuances and transfers, Salgado at long last had his merits hearing before the IJ. When asked for his current address, Salgado said that he could not remember because "I had an accident last Friday . . . and my memory is not very well." Salgado had been living at his then current address for at least two years. On the one hand, in support of his mental incompetency claim, Salgado testified that he was "a bit confused" and that he did not "have a memory to remember things right now." But, on the other hand, he did not go to the hospital after the accident. Nevertheless, Salgado stated that he did not feel he could testify. Salgado's counsel petitioned the IJ to continue the hearing in light of Salgado's memory difficulties, and the IJ requested questioning regarding the accident.

Salgado then testified that he was going 35 to 40 miles per hour on I-5 when he hit another car. He testified that the accident was not bad, and that the police were not called. But he testified that he and the other driver exchanged insurance information, and that his car was damaged more than the other car. Salgado stated that he had not suffered physical injuries but was having mental difficulties. Salgado had not told his counsel about the accident, although he saw her after the accident and before the hearing. The IJ declined to grant the continuance.

Salgado could not give full addresses for places where he had lived in the United States, and he gave unclear testimony about a series of years when his wife and two sons lived in Mexico while he lived in the United States. Salgado at first stated that he was unemployed during that time, but later stated that he was self-employed, collecting items he could resell for money.

When Salgado was arrested on the smuggling charge in 2006, his family was living in Mexico. Salgado attempted to smuggle a child into the United States for a friend, but he could not remember the name of the child or the friend's last name. Salgado stated that it was the only time he had tried to smuggle someone into the country. Salgado stated that he was "confused" and "remorseful" when he was detained in 2006. He testified that the 2006 interview was in English, although the sworn statement reflects the interview was in Spanish. Apart from his smuggling crime, Salgado has several other criminal convictions and arrests: a 1999 domestic violence incident when he slapped his wife across the cheek while intoxicated, a 1991 trespassing/petty theft conviction, and two DUIs.

Salgado testified that he first came to the United States at the age of 15, in about 1981. While Salgado's wife and

children generally lived in Mexico, he would bring his children to school in the United States. Salgado could not give the name of the school his children attended, but noted that his children did not start attending school here until after the 2006 smuggling incident. For three years, Salgado would spend three to four nights a week in Mexico, where his children were living, and then drive his children to school in the United States in the morning. Salgado had been making payments on a home in Tijuana, Mexico for 13 or 14 years at the time of the hearing.

## B

The IJ began his oral decision by noting that Salgado admitted to the attempted smuggling of a minor child into the United States. The IJ observed that Salgado testified at the hearing despite the fact that he had been involved in a "very minor" accident, with little damage to his car and no physical injuries, the Friday before the hearing. Salgado failed to mention the accident to his counsel, even though he met with her a few days later. The IJ found no "signs whatsoever of any kind of problem that would affect [Salgado's] ability to testify and make him incompetent to testify." The IJ further found that Salgado was alert, asked for clarification when he did not understand, and sometimes answered before the translator had finished his translation.

The IJ determined that Salgado's eligibility for cancellation was in question because Salgado had lived in Tijuana, Mexico for at least two years. The IJ noted that Salgado's testimony regarding his U.S. addresses was "very sketchy and vague" and that Salgado could not even remember his current U.S. address, where he had resided for the last two years. The IJ assumed *arguendo* that despite inconsistencies in testimony and work history

documentation, Salgado could meet the residency requirements.

But the IJ concluded that Salgado had not met his burden to show that he deserved a favorable exercise of discretion for cancellation: Salgado had two DUI convictions, a conviction for domestic violence, and several arrests; he helped his wife to illegally enter the United States on more than one occasion, including after the child smuggling incident which was the basis for this removal proceeding; there was uncertainty about the length of his residence in the United States, particularly because he owned a home in Tijuana, Mexico, where he lived at various points; and both of Salgado's children lived in Mexico during their formative years.

The IJ considered Salgado's positives, including that he had a long period of residence in the United States, that his two children were born in the United States, and that he could not continue his job at the Coronado Brewery if he were removed. But the IJ concluded that the positives did not outweigh the negatives to favor a discretionary grant of cancellation of removal.

## C

A three-judge panel of the BIA affirmed the IJ's determination that Salgado was mentally competent to participate in the removal proceedings. The BIA found that based on the testimony Salgado gave, the IJ correctly rejected his request for a continuance for a medical evaluation. The BIA found that "[a]lthough the record reflects that the respondent did have trouble remembering certain addresses and residences, there is no evidence or assertion that the respondent lacked 'a rational and factual understanding of the nature and object of the proceedings.'"

It further concluded that Salgado had an opportunity to consult with counsel and examine and present evidence as required by *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011). The BIA noted that the facts that Salgado could not remember, including addresses and dates of residence, went to the issue of continuous residence, on which the IJ did not rule in denying Salgado's application for cancellation of removal.

The BIA also found that the IJ correctly denied Salgado's requested relief of cancellation of removal because his adverse factors—paying for his wife to be smuggled and attempting to smuggle a friend's child into the United States, criminal convictions, and not creating significant United States ties—together outweighed his residence in the United States. The BIA affirmed the IJ's conclusion that Salgado did not meet his burden of establishing eligibility for cancellation of removal.

## II

Salgado only contests the IJ's conclusion that a continuance was not warranted after the IJ determined Salgado had not shown indicia of mental incompetency, and the BIA's affirmance of that decision. We review for abuse of discretion whether the BIA has clearly departed from its own standards. *Mejia v. Sessions*, 868 F.3d 1118, 1121 (9th Cir. 2017).

## III

Salgado argues that the IJ erred by not granting his counsel's request for a continuance when Salgado's competency was questioned, and that a lack of medical evidence of mental illness is not dispositive. The Government counters that Salgado failed to show he was not

competent to proceed at the hearing.  On this point, we agree with the Government.

The Government further argues the IJ did not rely on any facts related to Salgado's memory issues in exercising discretion to deny him cancellation of removal, and therefore his claimed mental incompetency is ultimately irrelevant. We disagree with the premise—that lack of reliance would make mental incompetency irrelevant—but we need not decide that issue.

The BIA here concluded that Salgado had not shown indicia of incompetency as set forth in *Matter of M-A-M-*, 25 I. & N. Dec. 474, because the record did not indicate that Salgado was unable to understand the nature and object of the proceedings.  This is the crux of the matter before us.

The BIA in *M-A-M-* describes the presumption of competency and the procedure an IJ should employ in determining if a petitioner is competent:

> (1) Aliens in immigration proceedings are presumed to be competent and, if there are no indicia of incompetency in a case, no further inquiry regarding competency is required.

> (2) The test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.

(3) If there are indicia of incompetency, the Immigration Judge must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings.

(4) If the alien lacks sufficient competency to proceed, the Immigration Judge will evaluate appropriate safeguards.

(5) Immigration Judges must articulate the rationale for their decisions regarding competency issues.

*Id.* at 474.   In *M-A-M-*, a person with a history of schizophrenia went through a hearing unrepresented and complaining of mental difficulties. *Id.* at 475. The appeal was remanded to the IJ to determine whether the petitioner was competent and whether any safeguards should apply. *Id.* at 474–75.   The BIA noted that "health-related complaints such as headache and poor memory do not rise to the level of mental incompetency." *Id.* at 477 (citing *Nelson v. INS*, 232 F.3d 258, 261–62 (1st Cir. 2000)).

Indicia of incompetency include "the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction," as well as "evidence of mental illness." *M-A-M-*, 25 I. & N. Dec. at 479. Two recent cases serve as examples of the indicia of incompetency we recognize:  *Calderon-Rodriguez v. Sessions*, 878 F.3d 1179 (9th Cir. 2018) and *Mejia v. Sessions*, 868 F.3d 1118 (9th Cir. 2017).

In *Calderon-Rodriguez*, we were presented with a petitioner who had documented post-traumatic stress disorder, depression, and sleep disturbance.  878 F.3d at

1181.  There, the IJ and BIA did not seek updated medical records from the Department of Homeland Security, which was providing the petitioner medical care.  *Id.* at 1183.  We concluded that the BIA abused its discretion in affirming the IJ's competency evaluation because the IJ's factual finding about the nearly year-old mental health evidence was inaccurate; and the IJ departed from the *M-A-M-* standard requiring the IJ to take "at least some measures" to determine whether petitioner was competent.  *Id.* at 1183 (internal quotation marks and citation omitted).

In *Mejia*, we determined the petitioner presented clear indicia of incompetency.  868 F.3d at 1121.  We noted the petitioner had a history of serious mental illness, including hallucinations, and he testified at the hearing that he was not taking his medication and that he was not feeling well, including "feeling a very strong pressure" in his head.  *Id.* at 1121–22.  We concluded that with those indicia, the IJ was under a duty to explain whether the petitioner was competent and what, if any, procedural safeguards were needed.  *Id.* at 1122 (noting that petitioner was represented by counsel).

But the mere inability to remember certain events and give certain testimony does not amount to mental incompetency.  Here, Salgado's alleged mental incompetency solely relates to his allegation of poor memory.  Salgado does not have a history of mental illness like the petitioners in *M-A-M*, *Calderon-Rodriguez*, and *Mejia*.  Salgado did not show an inability to answer questions or a high level of distraction.  *See Mejia*, 868 F.3d at 1121–22.  Nor did he show an inability to stay on topic. *See M-A-M-*, 25 I. & N. Dec. at 479.  The IJ found that Salgado was alert, asked for clarification when he did not understand, and sometimes answered before the translator finished his translation.  As the BIA explained, Salgado did

not allege that the accident affected his ability to comprehend the proceedings.

This is a case of poor memory at the most. *See Nelson v. INS*, 232 F.3d 258, 262 (1st. Cir. 2001) (concluding that the petitioner's complaints of forgetting things and having bad memory were not sufficient to rise to the level of mental incompetency) (citing *Nee Hao Wong v. INS*, 550 F.2d 521, 522 (9th Cir. 1977)). The IJ was not required to obtain a mental health evaluation to determine that Salgado was competent. *See M-A-M-*, 25 I. & N. Dec at 481 (noting that an IJ *can* order a mental evaluation when determining competency); *see Mejia*, 868 F.3d at 1121. There was no abuse of discretion here.

Further, even though safeguards are only required when an IJ concludes an applicant is incompetent, Salgado was nevertheless afforded the very safeguards contemplated by *M-A-M-*—the opportunity to consult with his attorney and to examine witnesses and present evidence. *See M-A-M-*, 25 I. & N. Dec. at 481–83 (noting that an IJ can, among other things, modify the questioning to make it easier, provide counsel, or allow someone to appear on the person's behalf as safeguards for a person who is determined to be mentally incompetent); *Calderon-Rodriguez*, 878 F.3d at 1182 ("Under *Matter of M-A-M-*, if there are indicia of incompetence . . . the Immigration Judge must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings.") (internal citation and quotation marks omitted); *Mejia*, 868 F.3d at 1121 ("If the IJ determines that the applicant is incompetent, the IJ must employ procedural safeguards and 'articulate his or her reasoning' for doing so.") (quoting *M-A-M-*, 25 I. & N. Dec. at 483). The IJ and the BIA did not err.

## IV

Our decision is reinforced by the fact that Salgado's inability to recall specific addresses was not the basis for the IJ's decision. The IJ, in his discretion, determined that Salgado's negative attributes outweighed any in favor of cancellation of removal, stating, "there is very limited evidence about what type of hardships or difficulties the respondent would face and the family would face if [Salgado] is removed to Mexico." *See* 8 U.S.C. § 1229b(a)*.* Salgado does not, because he cannot, appeal that decision. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Romero-Torres v. Ashcroft*, 327 F.3d 887, 892 (9th Cir. 2003) ("We lack jurisdiction to review the BIA's discretionary determination that an alien failed to satisfy the 'exceptional and extremely unusual hardship' requirement for cancellation of removal."). In making this ruling, the IJ assumed *arguendo* that Salgado was eligible for cancellation of removal, even though the Government argued that he had abandoned his U.S. residence. Thus, there is no indication that a better recall by Salgado of certain details would have changed the result here. Any error—and we find none—was harmless.

## V

We hold that alleged poor memory without some credible evidence of an inability to comprehend or meaningfully participate in the proceedings does not constitute indicia of incompetency. The standard for mental incompetency as set by the BIA in *M-A-M-*, and endorsed by our court in *Calderon-Rodriguez* and *Mejia*, is a stringent one. To demonstrate mental incompetency, a person must show some inability to comprehend or to assist and participate in the proceedings, some inability to consult with or assist their counsel or their representative if *pro se*, and lack of a reasonable opportunity to present evidence and

examine witnesses, including cross-examination of opposing witnesses. The mere inability to recall some events, a common weakness, and other similar mental lapses, are not sufficient to show mental incompetency.

In this case, there was no evidence—either medical or through Salgado's responses at the hearing—that Salgado did not comprehend the nature and object of the proceedings. Salgado was represented by counsel, and there is no evidence that he was unable meaningfully to assist counsel's defense efforts. The IJ did not err by denying Salgado's request for a continuance for a mental health evaluation. In summary, the BIA was correct to conclude that Salgado did not show indicia of incompetency.

**PETITION DENIED.**