**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 7 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OMAR M. BAILEY,

               Petitioner,

   v.

MERRICK B. GARLAND, Attorney
General,

               Respondent.

No. 18-73044

Agency No. A097-447-791

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 9, 2021
Seattle, Washington

Before: W. FLETCHER, WATFORD, and COLLINS, Circuit Judges.

Omar M. Bailey, a native and citizen of Jamaica, petitions for review of the

decision of the Board of Immigration Appeals ("BIA") affirming the order of the

Immigration Judge ("IJ") denying his applications for asylum, withholding of

removal, and protection under the Convention Against Torture. "We review for

abuse of discretion whether the BIA clearly departs from its own standards" with

respect to competency procedures. *Mejia v. Sessions*, 868 F.3d 1118, 1121 (9th

Cir. 2017). "We review factual findings, including adverse credibility

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

determinations, for substantial evidence." *Mukulumbutu v. Barr*, 977 F.3d 924, 925 (9th Cir. 2020). A finding is supported by substantial evidence unless "'any reasonable adjudicator would be compelled to conclude to the contrary' based on the evidence in the record." *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)). We have jurisdiction under § 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252, and we deny the petition.

1. Bailey argues that the IJ abused his discretion by failing to conduct a more thorough competency evaluation in light of asserted indicia of incompetency demonstrated by Bailey during his proceedings, including the following: (1) in the final moments of his proceedings, Bailey testified that a doctor at his immigration detention facility recommended that he see a psychologist; (2) his claims for relief were based in part on the allegation that he had been shot in the back of the head in 2016; and (3) as the IJ acknowledged in his decision, Bailey had given several answers that were "unintelligible" and "nonresponsive." Although Bailey did not make this argument before the BIA, we may review this issue because the BIA addressed in its decision whether the record raised a question as to Bailey's competency. *Parada v. Sessions*, 902 F.3d 901, 914 (9th Cir. 2018).

"Aliens in immigration proceedings are presumed to be competent and, if there are no indicia of incompetency in a case, no further inquiry regarding competency is required." *Salgado v. Sessions*, 889 F.3d 982, 987 (9th Cir. 2018)

2

(quoting *Matter of M-A-M-*, 25 I. & N. Dec. 474, 474 (B.I.A. 2011)). Here, the IJ was not alerted to a potential competency issue until near the end of Bailey's final removal hearing. Bailey had previously indicated that he had no mental or physical problems, and the IJ observed him for a substantial amount of time across multiple hearings, in which Bailey testified, submitted letters by witnesses, and examined a witness. The transcript of the proceedings supports the agency's conclusion that Bailey did not demonstrate indicia of incompetency and that his "unintelligible" and "nonresponsive" answers resulted when he was confronted with problematic aspects of his statements. Further, although Bailey testified that he was shot in the back of the head in 2016, none of the limited details he provided about his injury triggered a suspicion of incompetency.

Although an IJ "'must take measures' to assess an individual's competence when there are indicia of incompetence," the "'approach taken in any particular case will vary based on the circumstances.'" *Calderon-Rodriguez v. Sessions*, 878 F.3d 1179, 1182 (9th Cir. 2018) (quoting *M-A-M-*, 25 I. & N. Dec. at 480–81). Upon learning about the recommendation by Bailey's doctor that he see a psychologist, the IJ asked Bailey about the basis for and the timing of that recommendation, as well as whether Bailey ultimately saw the psychologist, received a diagnosis, or was taking medication. Bailey told the IJ that he was merely having trouble sleeping and talking in his sleep and that he was prescribed

3

sleeping pills but had stopped taking them. Based on those responses, and given that the IJ had already observed Bailey over the course of multiple proceedings by that point, the IJ did not abuse his discretion by conducting only a limited inquiry before concluding that Bailey was competent. Further, the IJ complied with agency standards by clearly articulating these reasons as the bases for his determination that Bailey was competent. *See Salgado*, 889 F.3d at 987 (noting that IJs "must articulate the rationale for their decisions regarding competency issues" (quoting *M-A-M-*, 25 I. & N. Dec. at 474)).

2. Bailey claims that he was threatened and assaulted on multiple occasions because he is bisexual, but the agency concluded that neither Bailey nor his two witnesses testified credibly, and it therefore rejected his applications for relief. We conclude that the agency provided "specific and cogent reasons supporting [the] adverse credibility determination," *Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010), and that those reasons are supported by substantial evidence in the record.

a. The agency properly relied upon significant inconsistencies and omissions in Bailey's statements. For example, Bailey testified before the IJ that he was stabbed in 1998 and 2013 on account of his bisexuality, but he did not mention these stabbings during his credible fear interview, even though the asylum officer asked him to identify any additional instances in which he was threatened

4

or harmed based on his asserted bisexuality. Moreover, Bailey specifically told the asylum officer that, during the 2016 shooting incident, the shooter only told him to "get up" and "don't move," but Bailey testified at his removal hearing that the shooter called him a homophobic slur. Further, Bailey provided inconsistent statements about whether he had a suspicion about the identity of his shooter.

These inconsistencies are not "mere trivial error[s]," *Shrestha*, 590 F.3d at 1044, but rather important details about the events giving rise to Bailey's claims for relief. *See id.* at 1047 ("[W]hen an inconsistency is at the heart of the claim it doubtless is of great weight."). Bailey argues that there are plausible reasons for the discrepancies that are consistent with finding him to be credible. However, the IJ considered his explanations and was not required to accept them. *See Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011).

b. The agency also permissibly concluded that Bailey's two witnesses, each of whom submitted a letter and testified at the final removal hearing, were not credible. First, although Bailey stated that he was shot five months after his cousin's death, David Clark's letter indicated that Bailey was shot on the same day that Bailey's cousin was killed, while Clark's oral testimony claimed that the incidents occurred two years apart. Second, Clark wrote in his letter and testified that Bailey was present when his cousin was killed, whereas Bailey testified that he learned about the death over the phone. Third, Bailey testified that he spoke to

5

Clark regarding an issue with Clark's letter to the court, but Clark denied that he and Bailey had discussed the letter.

There were also inconsistencies as to whether Bailey had told Clark or his second witness, Troy Robinson, that he was bisexual. Clark's testimony was inconsistent with Bailey's statements that Bailey did not tell Clark that he was bisexual or that he was shot on account of his sexual orientation. The same inconsistencies were present in Robinson's testimony, and neither witness's letter mentioned Bailey's bisexuality at all. The agency permissibly relied upon the inconsistencies in the witnesses' testimony in making its adverse credibility determinations. *See Kin v. Holder*, 595 F.3d 1050, 1056–57 (9th Cir. 2010).

c. The agency also permissibly relied upon Bailey's demeanor and responsiveness to questions, and the record supports the agency's conclusion that Bailey provided "unintelligible" and "nonresponsive" answers when asked questions concerning potential inconsistencies in his statements. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (requiring the IJ to consider "the demeanor, candor, or responsiveness of the applicant"); *see also Shrestha*, 590 F.3d at 1041 (noting that "IJs are in the best position to assess demeanor and other credibility cues that we cannot readily access on review").

d. The agency also permissibly concluded that Bailey had failed to provide corroborating documentary evidence to support his claims given that the IJ

adequately warned him that such documentation was necessary and provided him the opportunity to obtain it. *See Jie Shi Liu v. Sessions*, 891 F.3d 834, 838 (9th Cir. 2018); *Ren v. Holder*, 648 F.3d 1079, 1093 (9th Cir. 2011).

In light of these various deficiencies in proof, the agency properly concluded that Bailey had failed to carry his burden on his asylum and withholding of removal claims. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003).

3. The agency also properly concluded that Bailey had not carried his burden to establish that it was more likely than not that he would be tortured if returned to Jamaica and that Bailey's claim under the Convention Against Torture therefore failed. Although the IJ's decision did not specifically mention the country conditions evidence that had been submitted, the IJ properly concluded that, on the record as a whole, Bailey had not shown that he was likely to be tortured. Given the "complete lack of credible testimony in this case," the generalized country condition evidence in the record did not establish that Bailey confronted a "particularized risk of torture" if removed to Jamaica. *See Lalayan v. Garland*, 4 F.4th 822, 840 (9th Cir. 2021).

The petition for review is **DENIED**.