NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 4 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VICTOR FUENTES,<br><br>       Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>       Respondent. | No. 22-1437<br><br>Agency No.<br>A072-255-390<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Immigration Judge

Argued and Submitted May 7, 2024
Pasadena, California

Before: WARDLAW, CHRISTEN, and BENNETT, Circuit Judges.
Dissent by Judge BENNETT.

Victor Fuentes, a native and citizen of Honduras, petitions for review of the

Immigration Judge's (IJ) order affirming an asylum officer's negative reasonable

fear determination. The court "review[s] for abuse of discretion whether the

[agency] clearly departs from its own standards." *Mejia v. Sessions*, 868 F.3d

---

\*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1118, 1121 (9th Cir. 2017).  We grant the petition and remand for further proceedings.

1.  A petition for review must be filed within thirty days of "the final order of removal."  8 U.S.C. § 1252(b)(1).  Because Petitioner filed his petition "within thirty days of the conclusion of his reasonable fear proceedings," his petition is timely.  *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1043 (9th Cir. 2023).

2.  To satisfy the exhaustion requirement, a claim must "have first been raised in the administrative proceedings below" in a manner sufficient to put the agency on notice so that it has "an opportunity to pass on th[e] issue."  *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020) (citation omitted); *see also* 8 U.S.C. § 1252(d)(1).  Here, Petitioner sufficiently apprised the agency of his potential competency issues.  He and his counsel informed the IJ that he suffered from mental illness, including schizophrenia and bipolar disorder, and that he took medication for those illnesses.  These statements put the IJ on notice, such that the IJ had the "opportunity" to apply the framework for evaluating competency set forth in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011).  *Bare*, 975 F.3d at 960 (citation omitted).

Moreover, "[i]t is well-established that we may review any issue addressed on the merits by the BIA, regardless of whether the petitioner raised it before the agency."  *Parada v. Sessions*, 902 F.3d 901, 914 (9th Cir. 2018).  Our dissenting

colleague misses the mark by suggesting Petitioner failed to adequately put the IJ on notice of the need to inquire into his competency. The record shows that the IJ assessed and ruled on Petitioner's competency. Under our case law, this exhausts the competence claim. *Calderon-Rodriguez v. Sessions*, 878 F.3d 1179, 1183 n.1 (9th Cir. 2018) (noting that a competence claim was exhausted because the "BIA addressed the merits of the IJ's competence determination"); *see also Kin v. Holder*, 595 F.3d 1050, 1055 (9th Cir. 2010).

3. Where a noncitizen presents "indicia of incompetency," the IJ "must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings." *Matter of M-A-M-*, 25 I. & N. Dec. at 474.[1] Here, Petitioner's counsel[2] informed the IJ that Petitioner suffered from serious mental illness, including "bipolar disorder, as well as schizophrenia and anxiety attacks," and noted he "is taking medications to deal with all of those mental disorders." Petitioner also informed the IJ and the asylum officer about his mental illness and

---

[1] The Government does not contest that *Matter of M-A-M-* applies in reasonable fear proceedings. "Generally, an appellee waives any argument it fails to raise in its answering brief." *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc). Moreover, *Matter of M-A-M-* clearly states that its requirements apply to "immigration proceedings" without limitation. 25 I. & N. Dec. at 484; *see also Matter of J-S-S-*, 26 I. & N. Dec. 679, 683 (BIA 2015). Although reasonable fear proceedings are "abbreviated" and are not "full evidentiary hearings," they are plainly immigration proceedings. *See Bartolome v. Sessions*, 904 F.3d 803, 813 (9th Cir. 2018).

[2] The procedures in *Matter of M-A-M-* apply regardless of whether a petitioner is represented by counsel. *See Mejia*, 868 F.3d at 1122.

3                                                                                          22-1437

need for medication. Petitioner's diagnoses and his need for medication are "evidence of mental illness" that plainly constitute *indicia* of incompetency, though not necessarily incompetency. *Salgado v. Sessions*, 889 F.3d 982, 987 (9th Cir. 2018) (quoting *Matter of M-A-M-*, 25 I. & N. Dec. at 479); *Mejia*, 868 F.3d at 1121-22; *see also Matter of M-A-M-*, 25 I. & N. Dec. at 479-80.

We do not suggest that a mental illness diagnosis may be equated with incompetency. But under binding precedent, because Petitioner "show[ed] 'indicia of incompetency,' the IJ ha[d] an independent duty to determine whether [Petitioner] [was] competent." *Mejia*, 868 F.3d at 1121 (quoting *Matter of M-A-M-*, 25 I. & N. Dec. at 480). This duty obligated the IJ "to take 'at least some measures' to determine" Petitioner's competency. *Salgado*, 889 F.3d at 988 (citation omitted).

In particular, we have recognized that an IJ abuses its discretion by failing to "adequately ensure that [the Department of Homeland Security] complie[s] with its 'obligation to provide the court with relevant materials in its possession that would inform the court about the [petitioner]'s mental competency,' as required by *Matter of M-A-M-*." *Calderon-Rodriguez*, 878 F.3d at 1183 (quoting *Matter of M-A-M-*, 25 I. & N. Dec. at 480). As in *Calderon-Rodriguez*, the IJ failed to ensure that DHS provided medical records in its possession. *Id.* When informed of Petitioner's mental illness, the IJ stated "All right" and "Okay," and proceeded

with questions on the merits of Petitioner's claim. Upon hearing that Petitioner took medication to deal with his mental illness, the IJ did not inquire about that medication or its effects, or whether Petitioner was presently under its influence. The IJ did not at any point mention any medical records, and did not identify medical documents among the materials it had reviewed. Nor did the IJ ask whether DHS possessed any medical records, and if so, whether they had been provided to the IJ, Petitioner, or his counsel.[3] The IJ abused its discretion because, after learning that Petitioner suffered from serious mental illness, the IJ did not ensure that DHS provided it with relevant medical records in its possession. *Calderon-Rodriguez*, 878 F.3d at 1183-84.[4]

Because the IJ disregarded *Matter of M-A-M-*'s procedural requirements, the proper course is to grant the petition and remand to the IJ for a competence

---

[3] Petitioner is currently detained and has remained in DHS custody since September 2021. During his reasonable fear interview, in August 2022, he stated that he "took [his] medication." At a minimum, this strongly suggested to the IJ that DHS provided at least some medical care to Petitioner during the preceding eleven months. Indeed, according to Petitioner, DHS later provided him—in connection with a request for reconsideration filed months after the IJ's decision— with nearly 1,000 pages of medical records from his time in DHS custody.

[4] The dissent asserts that the facts in *Calderon-Rodriguez* were different because the petitioner in that case experienced psychosis and hallucinations, and the IJ had evidence that the petitioner's medications had changed since his prior mental health review. *See Calderon-Rodriguez*, 878 F.3d at 1183. But in this case, we do not know whether and to what extent Petitioner suffered from psychosis or hallucinations, or about his medication history, because the IJ did not inquire at all about Petitioner's mental illness and did not ensure that DHS complied with its obligation to provide medical records.

evaluation that comports with *Matter of M-A-M-*. *Mejia*, 868 F.3d at 1122; *Calderon-Rodriguez*, 878 F.3d at 1184; *see also Montes-Lopez v. Holder*, 694 F.3d 1085, 1092 (9th Cir. 2012) ("When this court concludes that an agency has not correctly applied controlling law, it must typically remand, even if [it] think[s] the error was likely harmless." (citing *INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam))).

**PETITION GRANTED and REMANDED.**

*Fuentes v. Garland*, No. 22-1437

BENNETT, Circuit Judge, dissenting:

Fuentes did not exhaust his *Matter of M-A-M-* (*MAM*), 25 I. & N. Dec. 474, 479 (BIA 2011), objection.  But even if he had, I would find that the immigration judge ("IJ") did not abuse her discretion in how she applied *MAM*'s framework. Therefore, I respectfully dissent and would deny the petition.

1.     Exhaustion is mandatory under 8 U.S.C. § 1252(d)(1).  *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023).  Thus, Fuentes's argument that the IJ failed to follow *MAM*'s framework for determining competency needed to "have first been raised in the administrative proceedings," *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020), in a manner sufficient to put the agency on notice so that it had "an opportunity to pass on th[e] issue," *id.* (quoting *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam)).

At the hearing before the IJ, Fuentes—who was represented by counsel—did not argue that he was incompetent, nor did he request any specific procedures under *MAM*.  Counsel mentioned that Fuentes had mental illnesses, including schizophrenia and bipolar disorder, for which Fuentes was receiving treatment.  The majority would treat "mental illness" as magic words that automatically trigger questions about competency and automatically trigger *MAM*.  But I do not believe this view has any support in the law.  *MAM* itself stated that "a diagnosis of mental

1

illness does not automatically equate to a lack of competency."[1] *MAM*, 25 I. & N. Dec. at 480. Counsel mentioning Fuentes's mental illness should not excuse Fuentes from the *mandatory* requirement that claims must "first be[] raised in the administrative proceedings below." *Bare*, 975 F.3d at 960.

Even if the issue of competency were exhausted because the IJ independently addressed it, that does not mean that the issue of whether the IJ properly applied the *MAM* framework was exhausted. Because Fuentes did not object specifically to the IJ's application of the *MAM* framework (or even mention *MAM*), the IJ did not get "an opportunity to pass on th[e] issue." *Id.* (quoting *Zhang*, 388 F.3d at 721); *see also Damian-Gallardo v. Garland*, No. 19-70230, 2021 WL 5412342, at *2 (9th Cir. Nov. 19, 2021) ("[T]o satisfy the exhaustion requirement, a . . . petitioner must [] provide the BIA with sufficient notice of the specific issue being contested."). In other words, because the IJ did not know that Fuentes thought she erred in her application of *MAM*, she had no chance to address any potential deficiencies.

---

[1] "[A] person is not competent . . . if 'he lacks the capacity to understand the nature and object of the proceedings against him [and] to consult with counsel . . . .'" *MAM*, 25 I. & N. Dec. at 478 (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). As *MAM* acknowledges, not all mental illnesses necessarily impact the ability to understand the proceedings. Fuentes had bipolar disorder and schizophrenia— serious mental illnesses to be sure, *see* American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 87, 123 (5th ed. 2013)—as well as anxiety and lack of concentration. But Fuentes was taking medications for his mental illnesses. Those, if treated, do not automatically raise questions about Fuentes's ability to understand and follow the proceedings. And there was no indication in the record that Fuentes lacked the ability to consult with his counsel.

2

2. But even if Fuentes properly exhausted this issue, I would find that the IJ did not abuse her discretion in how she conducted the hearing (as discussed further below). "[A]n agency abuses its discretion if it clearly departs from its own standards." *Alphonsus v. Holder*, 705 F.3d 1031, 1044 (9th Cir. 2013) (quotation marks and citation omitted), *abrogated on other grounds recognized by Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018).

*MAM* provides that, if there are indicia of incompetency, the IJ must take measures to determine whether a respondent is competent to participate in proceedings. If the respondent is not competent, the IJ needs to prescribe safeguards (like representation by counsel) to protect the respondent's rights.[2] *MAM*, 25 I. & N. Dec. at 479–84.

The majority contends that Fuentes's mental illnesses alone are "indicia of incompetency" that trigger *MAM*'s procedural requirements. Majority at 3. But *MAM* itself contemplates a more holistic approach to determining whether there are indicia of competency:

> Indicia of incompetency include a wide variety of observations and evidence. For example, the Immigration Judge or the parties may observe certain behaviors by the respondent, such as the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction. Second, the record may contain evidence of mental illness or incompetency. This could include direct assessments of the respondent's mental health, such as medical reports or

---

[2] As noted above, Fuentes was represented by counsel in the hearing before the IJ.

assessments from past medical treatment or from criminal proceedings, as well as testimony from medical health professionals.

*MAM*, 25 I. & N. Dec. at 479. *MAM* also acknowledges that "there are many types of mental illness that, even though serious, would not prevent a respondent from meaningfully participating in immigration proceedings. In other words, a diagnosis of mental illness does not automatically equate to a lack of competency." *Id.* at 480. Under *MAM*'s standard, mental illness alone does not automatically count as an "indici[um] of incompetency." *Id.* at 479. In ignoring this language from *MAM*, the majority substitutes its own judgment for that of the agency and misapplies the abuse of discretion standard, which requires us to look at whether the agency has "*clearly* depart[ed] from *its own* standards." *Alphonsus*, 705 F.3d at 1044 (emphasis added).

3.    Finally, even if Fuentes's mental illnesses were per se indicia of incompetency, the IJ did not abuse her discretion in how she carried out *MAM*'s requirements for measuring competency. *MAM* states that "[w]hen there are indicia of incompetency, an Immigration Judge must take measures to determine whether a respondent is competent to participate in proceedings. *The approach taken in any particular case will vary based on the circumstances of the case*." *MAM*, 25 I. & N. Dec. at 480 (emphasis added). *MAM* then provides examples of the types of measures an IJ *may* take, but it does not specify what measures the IJ *must* take.

4

Therefore, it was not an abuse of discretion for the IJ not to take specific steps like requesting the medical records from DHS or modifying the questions she asked to be more "simple and direct." Even if the IJ did not do these specific things, the IJ did take significant and meaningful steps to assess Fuentes's competency. The IJ reviewed the transcript of Fuentes's interview with the asylum officer and noted that "the applicant responded appropriately to the asylum officer's many questions on a wide variety of topics. The applicant's answers were detailed, and included dates, locations, and time periods such as the length of sentences in custody."

The IJ also made her own observations about Fuentes's competency, noting that Fuentes "responded promptly and appropriately" to her questions:

> The applicant's answers in court were, again, detailed, and closely mirrored the facts applicant reported during the asylum interview. The Court re-asked over a dozen questions the asylum officer had previously asked, and the applicant's answers were appropriate, were prompt, and were uniformly consistent with his prior answers given during the asylum interview. The applicant identified the same prior harm each time, and in re-telling remembered when his prior deportations and terms of incarceration occurred, though they were many years ago, and remembered when and where he returned to in the United States following each removal. The applicant remembered many details regarding his prior removals, his time in Honduras, his relationship with his uncle from many years ago, and his testimony on these points were consistent between the interview and the court's questioning. The applicant remembered his years of imprisonment and the lengths of his sentences. In sum, nothing in the applicant's testimony, or in applicant's behavior, gave the Court the slightest

5

concern regarding his mental competency, his understanding at the asylum interview or in court, or his memory.

Given the facts here, this was more than enough to satisfy *MAM*'s requirement that the IJ "take measures to determine whether a respondent is competent to participate in proceedings." *MAM*, 25 I. & N. Dec. at 480.

The majority relies on *Calderon-Rodriguez v. Sessions*, 878 F.3d 1179 (9th Cir. 2018), which held that the IJ in that case abused her discretion by not "adequately ensur[ing] that DHS complied with its 'obligation to provide the court with relevant materials in its possession that would inform the court about the respondent's mental competency.'" *Id.* at 1183; Majority at 4–5. But the facts of *Calderon-Rodriguez* were different. The petitioner in that case had experienced psychosis and hallucinations, and the IJ had evidence that the petitioner's medications had changed since his last mental health review a year earlier. *Calderon-Rodriguez*, 878 F.3d at 1183. Here, the asylum officer interview was on July 29, 2022, and the hearing with the IJ was soon after on August 8, 2022. Given that only ten days had passed since the asylum officer interview, it was reasonable for the IJ to rely on Fuentes's detailed and consistent answers to the asylum officer's questions in measuring Fuentes's competency. Again, *MAM* provides that "[t]he approach taken in any particular case will vary based on the circumstances of the case," *MAM*, 25 I. & N. Dec. at 480, and the DHS medical records, while helpful in

6

*Calderon-Rodriguez*, were not necessary to "inform the [IJ] about [Fuentes's] mental competency," *Calderon-Rodriguez*, 878 F.3d at 1183, given the facts here.[3]

---

[3] The majority writes:

> The dissent asserts that the facts in *Calderon-Rodriguez* were different because the petitioner in that case experienced psychosis and hallucinations, and the IJ had evidence that the petitioner's medications had changed since his prior mental health review. *See Calderon-Rodriguez*, 878 F.3d at 1183. But in this case, we do not know whether and to what extent Petitioner suffered from psychosis or hallucinations, or about his medication history, because the IJ did not inquire at all about Petitioner's mental illness and did not ensure that DHS complied with its obligation to provide medical records.

Majority at 5 n.4.

This response misses the mark. Unlike in *Calderon-Rodriguez* (where there were indicia of incompetency, as, for example, the government itself informed the IJ that the petitioner was "possibly incompetent" and even asked for a remand so that the agency could specifically make a competency determination, 878 F.3d at 1181), the IJ in this case had no reason to question Fuentes's competency, as Fuentes's answers to the IJ's questions were "detailed" and "closely mirrored the facts [he] reported during the asylum interview." The IJ "re-asked over a dozen questions the asylum officer had previously asked, and the applicant's answers were appropriate, were prompt, and were uniformly consistent with his prior answers given during the asylum interview." There was therefore no reason for the IJ to suspect that Fuentes was not competent, i.e., did not have a "rational and factual understanding of the nature and object of the proceedings." *MAM*, 25 I. & N. Dec. at 479 ("[T]he test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings . . . ."); *see also id.* at 477 ("[A]n alien is presumed to be competent . . . .").

7

Because the IJ did not "*clearly* depart[] from [the agency's] own standards,"

*Alphonsus*, 705 F.3d at 1044 (emphasis added), I would hold that the IJ did not abuse

her discretion, and I would deny the petition.