**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE TZOMPANTZI-SALAZAR, *Petitioner*, v. MERRICK B. GARLAND, Attorney General, *Respondent*. | No. 20-71514 Agency No. A200-196-389 ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 21, 2021*
Pasadena, California

Filed February 9, 2022
Amended April 21, 2022

Before: Ryan D. Nelson and Lawrence VanDyke, Circuit
Judges, and Karen E. Schreier,** District Judge.

Order;
Opinion by Judge VanDyke

---

* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

** The Honorable Karen E. Schreier, United States District Judge for
the District of South Dakota, sitting by designation.

**SUMMARY**[***]

**Immigration**

The panel filed an order (1) amending the opinion filed on February 9, 2022; and (2) stating that no further petitions for rehearing or rehearing en banc would be entertained. In the amended opinion, the panel denied Jose Tzompantzi-Salazar's petition for review of a decision of the Board of Immigration Appeals, holding that (1) the Board did not abuse its discretion in denying Tzompantzi-Salazar's motion to reopen in which he raised a challenge to his charging document under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018); and (2) substantial evidence supported the Board's denial of relief under the Convention Against Torture.

Tzompantzi-Salazar sought to reopen proceedings arguing that the agency lacked jurisdiction because his Notice to Appear (NTA) did not include the time and date of his hearing. The panel concluded that Tzompantzi-Salazar's argument failed for two reasons. First, Tzompantzi-Salazar's current proceeding was initiated with a different charging document—a Notice of Referral to Immigration Judge (NOR)—which the panel concluded alone made *Pereira* inapplicable to his proceeding. Second, the panel concluded that even if it were to assume NTAs and NORs are analogous in the way Tzompantzi-Salazar claimed, his argument was foreclosed by precedent holding that when hearing details are later provided, as they were here, there is no jurisdictional defect.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that substantial evidence supported the Board's denial of CAT relief.  First, the panel explained that while petitioners seeking CAT relief are not required to prove that safe relocation would be factually impossible, they do carry the overall burden of proof to demonstrate that it is more likely than not that they will be tortured if removed.  And in deciding whether a petitioner has satisfied his or her burden, the IJ must consider all relevant evidence, including but not limited to the possibility of relocation within the country of removal.  The panel agreed with the Board that Tzompantzi-Salazar could avoid any risk of future torture by relocating to his home state in central Mexico, Tlaxcala—thousands of miles from the border where his two kidnappings allegedly occurred.

Tzompantzi-Salazar argued that relocation to his home state would not be reasonable because he is "still relatively young with limited job prospects in Mexico with not having been back for some time," and because if removed he would once again stay in Tijuana near the border to be close to his children in the United States.  The panel rejected Tzompantzi-Salazar's argument, explaining that in assessing eligibility for CAT relief, the agency must consider the *possibility* of relocation—without regard for the *reasonableness* of relocation that is considered in other types of applications, such as asylum and withholding of removal.  The panel concluded that the evidence (including Tzompantzi-Salazar's own testimony) showed that relocation to his home state in central Mexico, where he had no issues of past harm and the majority of his family still resides, was eminently possible.

The panel concluded that even putting aside the possibility of relocation, the remaining CAT factors did not push Tzompantzi-Salazar past the 50% threshold required

for CAT relief.  The panel wrote that although past torture can be relevant in assessing an applicant's risk of future torture, that alone does not establish or even give rise to a presumption that the applicant will suffer future torture.  The panel explained that, as the agency emphasized, CAT relief is "forward looking," and Tzompantzi-Salazar's previous kidnappings—even assuming they occurred just as described and the first was committed by real police officers—do not establish that he continues to face a risk of future torture more than ten years later.  Nor did the record compel the conclusion that the kidnappings rose to the level of torture, which the panel explained is reserved for extreme cruel and inhuman treatment that results in severe pain or suffering.  The panel concluded that the record would not compel the conclusion that Tzompantzi-Salazar established a more than 50% chance of future torture because he failed to provide any evidence that someone in his circumstance is more likely than not to be kidnapped and mistreated.

Finally, the panel wrote that the remaining CAT factors, including the country conditions evidence and other relevant context, all undercut Tzompantzi-Salazar's belief that he faces the extremely high threshold of future torture required by statute.  The panel explained that the country conditions evidence confirmed what the agency emphasized was the important context surrounding Tzompantzi-Salazar's kidnappings, which occurred near the border, in an area with notoriously higher rates of crime, where Tzompantzi-Salazar voluntarily chose to stay as he searched for a smuggler to bring him illegally across the border in violation of a prior removal order.  The panel wrote that country conditions evidence acknowledged crime and police corruption in Mexico generally, as well as higher rates in Tijuana, but failed to show that Tzompantzi-Salazar faces a

particularized, ongoing risk of future torture higher than that faced by all Mexican citizens.

**COUNSEL**

Murray David Hilts, Law Offices of Murray D. Hilts, San Diego, California, for Petitioner.

Jessica D. Strokus, Trial Attorney; Anthony C. Payne, Assistant Director; Brian Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**ORDER**

The Opinion filed on February 9, 2022, is amended as follows:

On slip opinion page 17, replace <While petitioners seeking CAT relief are not required to prove that safe relocation would be factually impossible, they bear the ultimate burden on all CAT factors, including relocation. *Maldonado*, 786 F.3d at 1164 ("[T]he BIA is not precluded from reading § 1208.16(c)(3) as requiring a CAT petitioner to show that he is unable to safely relocate within the country of removal."). And here the evidence> with <While petitioners seeking CAT relief are not required to prove that safe relocation would be factually impossible, they do "carr[y] the overall burden of proof." *Maldonado*, 786 F.3d at 1164. As the court explained in *Maldonado*, petitioners "must demonstrate that it is more likely than not that he or she will be tortured if removed." *Id.* And in deciding

whether a petitioner has satisfied his or her burden, "the IJ must consider all relevant evidence, including but not limited to the possibility of relocation within the country of removal." *Id.* Here the evidence >.

The Clerk shall file the amended opinion submitted with this Order. No future petitions for rehearing or rehearing en banc will be entertained.

## OPINION

VANDYKE, Circuit Judge:

Jose Tzompantzi-Salazar (Petitioner), a native and citizen of Mexico, petitions for review of the agency's rejection of his claim for protection under the Convention Against Torture (CAT) and rejection of his separate motion to reopen and remand his removal proceedings based on claimed jurisdictional defects in his charging documents.

Petitioner has illegally entered the United States at least seven times, spending much of his time in Tijuana preparing to cross back into the United States. His CAT claim and stated fear of future torture if returned to Mexico is based on two kidnappings that allegedly occurred in border towns during the summer of 2011, while Petitioner was preparing to re-enter the United States.

The Board of Immigration Appeals (BIA) affirmed the Immigration Judge's (IJ) denial of CAT relief and determination that Petitioner—having received no threats since the 2011 kidnappings—did not face a higher risk of torture than that faced by all Mexican citizens. The BIA also agreed with the IJ that Petitioner could avoid torture in

Mexico by avoiding the border and relocating to his home state in central Mexico, where his parents and siblings safely reside.

The BIA also denied Petitioner's motion to reopen and remand because his jurisdictional arguments relied solely on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), which our court has already squarely rejected as relevant to the agency's jurisdiction. *See Karingithi v. Whitaker*, 913 F.3d 1158, 1159–62 (9th Cir. 2019) (affirming agency's jurisdiction and holding that *Pereira* "does not control" and "has no application here" when the hearing time and date were later provided).

The agency did not abuse its discretion in denying Petitioner's motion to reopen and remand. Nor did it err in denying Petitioner's CAT claim, as he can relocate to his home state in central Mexico and away from the border, where his previous harms occurred. Accordingly, pursuant to our jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

## I. FACTUAL BACKGROUND

Petitioner grew up in central Mexico in the state of Tlaxcala, and first illegally entered the United States around August 2004 when "some friends offered [him] the opportunity." He returned to his home state in 2010 for a family funeral, where he remained with no issues for a few months.

But Petitioner ran into trouble getting back into the United States unnoticed. In his 2010 and 2011 attempts to illegally re-enter, Petitioner was apprehended several times by the Department of Homeland Security (DHS) and issued multiple orders to voluntarily return to Mexico. Each time

Petitioner returned to Mexico he stayed near the border town of Tijuana, where he planned and prepared for his next attempt to cross the border to be in the United States near his wife, Ana Melendez, and their children.  According to Petitioner, he faced hardships south of the border during his most recent attempts to enter the United States and those events make him fear returning to Mexico.  He claims he was kidnapped in Tijuana in July 2011, while looking for a smuggler to bring him across the border, and later kidnapped in the mountains while attempting to cross the border in August 2011.

## A.  First Kidnapping: July 16, 2011

According to Petitioner, he stayed a few weeks in July 2011 at Hotel Cortez near Tijuana while looking for a smuggler to bring him across the border.  During his stay, he received routine wire payments from Ms. Melendez to cover his expenses.  On July 16, 2011, he was stopped by two men "dressed like policeman" who asked him for identification.  After looking over Petitioner's consulate card, they forced him into a van and drove him to a house where he was beaten, strip-searched, and held for ransom.  He initially refused to give the kidnappers Ms. Melendez's number but eventually relented after he was beaten with brass knuckles that caused hearing damage.

The kidnappers demanded that Ms. Melendez wire $20,000 to "Sandra Ruiz," or they would harm Petitioner.  Ms. Melendez did not have $20,000, but wired what she could—almost $3,000—according to the kidnappers' instructions.  A few days later, on July 19, 2011, the kidnappers released Petitioner with instructions to "disappear."  Petitioner did not seek medical treatment for his injuries or report the kidnapping.

**B. Expedited Removal Order: July 22, 2011**

Three days after he was released by the kidnappers, Petitioner again crossed the border into the United States, was apprehended by DHS and, because of his previous encounters with border patrol, taken into custody and issued an expedited removal order. Petitioner does not recall being asked if he feared returning to Mexico, but he expressed no fear during his July 2011 processing and his intake photograph reflected no visible injuries from the alleged recent kidnapping.

**C. Second Kidnapping: August 2011**

After being deported pursuant to the expedited removal order on July 24, 2011, Petitioner claims he remained in Tijuana for a few weeks at Hotel San Diego (with no threats or issues) while he waited for the right smuggler to again escort him over the border. When crossing the hills between Tijuana and San Diego, Petitioner and his smuggler were kidnapped and held for a day and a half by criminals who beat Petitioner and demanded his family's phone number so they could collect a ransom. Petitioner testified that the second group of kidnappers were not police officers or pretending to be police officers; instead, they were "dressed in normal clothing" and wore bandanas. Petitioner was released when the group's food ran out. He returned to Tijuana, where he remained for a few weeks (again with no issues) before making his last entrance into the United States on or about September 5, 2011.

## II.  PROCEDURAL BACKGROUND

### A.  Charging Documents

Shortly after his September 2011 entrance, Petitioner was taken into DHS custody and received two different charging documents.  The first, a Notice to Appear, was mistakenly issued but later withdrawn when those proceedings were terminated because Petitioner (with the reinstatement of his prior expedited removal order) was not eligible for cancellation of removal.  The second, a Notice of Referral to Immigration Judge (NOR), was filed on April 6, 2012, and reflected the location of Petitioner's IJ hearing but indicated the time and date were "[t]o be set."  Three days later Petitioner received his missing hearing details in a "Notice of Withholding-Only Hearing."  No party disputes that Petitioner received all hearing notices and attended all IJ hearings.

Petitioner appeared for a reasonable fear interview on February 14, 2012.  An asylum officer made a reasonable fear determination on March 29, 2012, and referred Petitioner to an IJ for credible fear hearings that took place on May 30, 2012, and June 14, 2012.

### B.  Initial IJ Hearing: 2012

In his initial hearing before the IJ, Petitioner testified about both kidnappings (the second of which was omitted from his prior written declaration).  Ms. Melendez also testified and described paying the ransom to the first set of kidnappers, but she did not recall the second kidnapping until prompted by Petitioner.

The IJ found Ms. Melendez credible.  And despite concerns with "several discrepancies" in Petitioner's

testimony that he failed to explain (conflicting timelines and the omission of any stated fear or evident injuries in his July 2011 deportation that followed his first kidnapping), the IJ stopped short of making an adverse credibility determination but warned that "it's a close case on your credibility."[1]  But even without an adverse credibility determination, the IJ noted it was not clear that the kidnappings rose to the level of torture, that they were committed by or with government acquiescence, or that Petitioner was harmed because of any ground protected by the Immigration and Nationality Act (INA).

Petitioner initially sought withholding of removal under both the INA and the CAT.  The IJ denied both claims, concluding Petitioner failed to show past persecution based on a protected ground (preventing INA relief) or that he would more likely than not face future torture if returned to Mexico (preventing CAT relief).

## C.  First BIA Decision and Ninth Circuit Remand: 2016

The BIA affirmed the IJ's denial of Petitioner's application, agreeing he failed to satisfy his burden for withholding of removal or CAT relief.  A panel of this court reviewed the agency's decision on June 29, 2016, affirming dismissal of Petitioner's withholding of removal claim but

---

[1] For example, Petitioner initially testified that he remained in Mexico from June 28, 2011, into part of August.  But he later conceded that his July 22, 2011, apprehension by U.S. Border Patrol made that timeline a physical impossibility.  He never explained these inconsistencies.

remanding for reconsideration of Petitioner's CAT claim, which the BIA then remanded to a second IJ.**[2]**

## D.  IJ Decision Post-Remand: 2018

On remand, and considering the only remaining claim for CAT relief, the second IJ gave Petitioner and the government an opportunity to provide any additional documents or updated country conditions evidence before a merits hearing on June 8, 2018.  At the hearing, Petitioner chose to provide no additional testimonial evidence, relying instead on the testimony given in 2012 and the updated country reports submitted by both parties.

The second IJ denied Petitioner's application for CAT relief, emphasizing Petitioner's burden of proof and his failure to show that he would more likely than not face future torture with government acquiescence.  The second IJ also found Petitioner credible.  But even assuming Petitioner testified credibly and the first kidnapping was actually committed by police, the second IJ found that the remaining CAT factors (Petitioner's ability to safely relocate and the greater context of his kidnappings, which both occurred near the border and had not resulted in any threats or harm in the years since) diminished Petitioner's risk of future torture below the more-likely-than-not standard.

## E.  Second BIA Decision on Appeal: 2020

On May 19, 2020, the BIA agreed with the second IJ that Petitioner failed to establish the higher than 50% risk of future torture required for CAT relief and dismissed the

---

**[2]** On October 27, 2016, Petitioner's IJ proceedings moved from Adelanto, California, to San Diego, California.

appeal.  The BIA considered Petitioner's recollection of the past kidnappings but found them insufficient to establish CAT relief, emphasizing the "forward-looking" nature of the statute.   It also considered country conditions reports showing generalized crime and corruption but found them too general to show that Petitioner faced any particularized threat of torture.   And like the second IJ, the BIA relied specifically on Petitioner's ability to safely relocate, affirming the second IJ's determination that Petitioner could avoid any threat of torture by relocating to his home state in Tlaxcala.

Petitioner also filed a motion to reopen and remand his removal proceeding in light of the Supreme Court's *Pereira* decision, which the BIA denied, dismissing any application of the case as "inapposite" to Petitioner's proceeding.

## III.  STANDARD OF REVIEW

"Where the BIA issues its own decision but relies in part on the immigration judge's reasoning, we review both decisions." *Flores-Lopez v. Holder*, 685 F.3d 857, 861 (9th Cir. 2012).

This court reviews the denial of a motion to reopen for abuse of discretion, with broad deference to the agency's decision.  *INS v. Doherty*, 502 U.S. 314, 323–24 (1992); *Shouchen Yang v. Lynch*, 822 F.3d 504, 508 (9th Cir. 2016); *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) (same standard for review of motions to remand).  Under that standard, this court defers to the Board's decision unless it acted arbitrarily, irrationally, or contrary to law.  *Yan Rong Zhao v. Holder*, 728 F.3d 1144, 1147 (9th Cir. 2013) (citing *Chang Hua He v. Gonzales*, 501 F.3d 1128, 1131 (9th Cir. 2007)).

We review the denial of CAT relief for substantial evidence. *Guo v. Sessions*, 897 F.3d 1208, 1212 (9th Cir. 2018) (internal citations omitted). "Under the substantial evidence standard, administrative findings of fact are conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary." *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006) (emphasis added) (internal citation and quotation marks omitted). This standard "precludes relief absent a conclusion that no reasonable factfinder could have reached the agency's result." *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) (internal citation omitted).

## IV.  DISCUSSION

### A. The Agency Reasonably Denied the Motion to Reopen and Remand.

Motions to reopen (or remand) in immigration proceedings are disfavored. We review them under a highly deferential standard of review, overturning the agency's decision only if the agency abused its discretion by acting arbitrarily, irrationally, or contrary to law. *See Chang Hua He*, 501 F.3d at 1131; *Feng Gui Lin v. Holder*, 588 F.3d 981, 984 (9th Cir. 2009). As relevant here, the agency may deny a motion to reopen if (1) the petitioner failed to establish a prima facie case for the relief sought; or (2) the petitioner failed to introduce previously unavailable material evidence. *See INS v. Abudu*, 485 U.S. 94, 105 (1988). Because Petitioner here did not provide any new evidence in support of his motion and instead relied entirely on the Supreme Court's decision in *Pereira v. Sessions*, he failed to establish a prima facie case for the relief sought and the agency reasonably denied his motion to reopen. 138 S. Ct. 2105 (2018).

**1.** *Pereira* **Has No Application to Petitioner's Proceeding.**

In *Pereira*, the Supreme Court answered what it described as a "narrow question," holding that a Notice to Appear (NTA) lacking the time and date of a petitioner's hearing was not an NTA for purposes of the stop-time rule for cancellation of removal proceedings. *Pereira v. Sessions*, 138 S. Ct. 2105, 2109–10 (2018). *Pereira* did not address agency jurisdiction, but Petitioner argues that because his NTA failed to specify the time and date of his hearing, the agency lacked jurisdiction over his proceeding.

Petitioner's argument fails for two reasons. First, as the agency pointed out, Petitioner's current proceeding was initiated with a different charging document—a Notice of Referral to Immigration Judge (NOR)—which alone makes *Pereira* inapplicable to his proceeding.[3] *Id.* Second, even if we were to assume NTAs and NORs are analogous in the way Petitioner claims,[4] his argument is foreclosed by our

---

[3] Petitioner was initially served with an NTA that mistakenly initiated a cancellation of removal proceeding. But that proceeding was terminated because Petitioner, after his prior expedited removal order was reinstated, is not eligible for cancellation of removal. Petitioner's current withholding-only proceeding was initiated with an entirely different charging document, an NOR, which, although it also lacked the time and date of his hearing, was followed by a notice of hearing that provided the hearing details.

[4] Such an assumption is unwarranted. The only obvious commonality between NTAs and NORs is that they are listed together as two of the three potential "charging documents" that, when filed, vest the Immigration Court with jurisdiction. *See* 8 C.F.R. § 1003.13 (defining "charging document"); *see also Romero v. Att'y Gen. U.S. of Am.*, 997 F.3d 145, 148–49 & 148 n.5 (3d Cir. 2021). Beyond 8 C.F.R. § 1003.14, which does not mention any time, place, or date requirements,

precedent holding that when hearing details are later provided (as they were here) there is no jurisdictional defect. *See Karingithi*, 913 F.3d at 1159–62 (emphasizing *Pereira*'s "narrow ruling" and rejecting its application in the jurisdictional context because, when the time and date of a hearing that were missing from an original NTA are later provided, there is no jurisdictional defect); *Aguilar Fermin v. Barr*, 958 F.3d 887, 889–91 (9th Cir. 2020) (also affirming agency's jurisdiction and rejecting application of *Pereira*, explaining that "an initial [charging document] need not contain time, date, and place information to vest an immigration court with jurisdiction if such information is provided before the hearing").

Because *Pereira* is inapplicable to Petitioner's proceeding, the BIA did not abuse its discretion in denying Petitioner's motion to reopen on that basis as he failed to show prima facie eligibility for relief. *See Abudu*, 485 U.S. at 104; *see also Singh v. INS*, 213 F.3d 1050, 1053 (9th Cir. 2000) ("Unless the [Board] acted arbitrarily, irrationally, or contrary to law, we should not disturb [its] ruling.") (citation and quotation marks omitted).

## B. Substantial Evidence Supports the Denial of CAT Relief.

The dispositive question in assessing a CAT claim is "whether the alien is more likely than not to be tortured in the country of removal."  8 C.F.R. § 1208.16(c)(4).  All

---

no regulation dictates what an NOR must contain.  In contrast, the agency's regulations do dictate that an NTA must contain the time, place, and date of the initial removal hearing.  *See* 8 C.F.R. § 1003.18.

evidence relevant to the possibility of future torture is to be considered, including:

> (i) Evidence of *past torture* inflicted upon the applicant; (ii) Evidence that the applicant *could relocate* to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass *violations of human rights* within the country of removal, where applicable; and (iv) Other relevant information regarding *conditions in the country* of removal.

8 C.F.R. § 1208.16(c)(3) (emphases added).

### 1. The Possibility of Relocation Justifies the Denial of CAT Relief.

Here, the second CAT factor (possibility of safe relocation) is well-established by Petitioner's own testimony that he could avoid any risk of future torture by relocating to his home state in central Mexico, Tlaxcala—thousands of miles from the border where the two kidnappings allegedly occurred. Petitioner testified he was never harmed by anyone in Tlaxcala and expressed no fear of being tortured there, and neither he nor his parents nor his siblings who still reside there have been subjected to any harm, persecution, or torture in Tlaxcala. *See Santos-Lemus v. Mukasey*, 542 F.3d 738, 747–48 (9th Cir. 2008) (affirming the denial of CAT relief because the ongoing safety of petitioner's family in his hometown constituted substantial evidence that petitioner would not more than likely be tortured), *abrogated in part on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013).

On appeal, Petitioner argues that relocation to his home state would not be reasonable because he is "still relatively young with limited job prospects in Mexico with not having been back for some time." Before the IJ, Petitioner explained that if removed he would once again stay in Tijuana near the border to be close to his children in the United States.

But in assessing eligibility for CAT relief, the agency must consider the *possibility* of relocation—without regard for the *reasonableness* of relocation that is considered in other types of applications (asylum and withholding of removal under the INA). *See* 8 C.F.R. § 1208.16(c)(3). Indeed, the asylum and CAT regulations with respect to the relocation factor "differ markedly." *Maldonado v. Lynch*, 786 F.3d 1155, 1163 (9th Cir. 2015) (en banc).[5]

While petitioners seeking CAT relief are not required to prove that safe relocation would be factually impossible, they do "carr[y] the overall burden of proof." *Maldonado*, 786 F.3d at 1164. As the court explained in *Maldonado*, petitioners "must demonstrate that it is more likely than not that he or she will be tortured if removed." *Id.* And in deciding whether a petitioner has satisfied his or her burden,

---

[5] *Compare* 8 C.F.R. § 1208.16(c)(3)(ii) (when assessing withholding of removal under CAT, the agency considers "[e]vidence that the applicant *could* relocate to a part of the country of removal where he or she is not likely to be tortured") (emphasis added), *with* § 1208.16(b)(2) (when assessing withholding of removal under INA, the agency considers whether "under all the circumstances, it would be *reasonable* to expect the applicant to" relocate to another part of the country of removal) (emphasis added), *and* § 1208.13(b)(3)(ii) (when assessing eligibility for asylum, the agency *presumes* relocation is unreasonable if the past persecution was state-sponsored, unless the government rebuts the presumption by a preponderance of the evidence) (emphasis added).

"the IJ must consider all relevant evidence, including but not limited to the possibility of relocation within the country of removal." *Id.* Here the evidence (including Petitioner's own testimony) shows that relocation to his home state in central Mexico, where he had no issues of past harm and the "majority" of his family still resides, is eminently possible. Petitioner argues that such relocation is unreasonable. But the reasonableness of a relocation is not relevant to a CAT claim, where the agency considers only whether safe relocation is possible, not whether it is reasonable (or comfortable or convenient). 8 C.F.R. § 1208.16(c)(3)(ii). Additionally, the country reports of a "high rate of murders" that Petitioner re-raises on appeal actually underscore the possibility (and reasonableness) of relocating to his home state, as most of the crime detailed in the reports is concentrated near the border where Petitioner claims he was kidnapped.

### 2. Remaining CAT Factors Do Not Compel a Different Conclusion.

Even putting aside the possibility of relocation, the remaining CAT factors do not push Petitioner past the 50% threshold required for CAT relief.[6] 8 C.F.R. § 1208.16(c)(3).

#### a. Past Torture

In assessing eligibility for CAT relief, the first factor (evidence of past torture), can be relevant in assessing an

---

[6] Even though our court has stated that "no one factor is determinative" in evaluating a CAT claim, *Maldonado*, 786 F.3d at 1164, it is hard to imagine what evidence could outweigh Petitioner's own testimony that safe relocation to his home state, while not personally preferable, is possible.

applicant's risk of future torture but does not alone establish or even give rise to a presumption that the applicant will suffer future torture. *See Dawson v. Garland*, 998 F.3d 876, 882 (9th Cir. 2021) (citing 8 C.F.R. § 1208.16(c)(3)). As the agency emphasized here, CAT relief is "forward looking," and Petitioner's previous kidnappings—even assuming they occurred just as described and the first was committed by real police officers—do not establish that he continues to face a risk of future torture more than ten years later.

Nor does the record compel the conclusion that the kidnappings (even as described by Petitioner) rose to the level of torture, which is reserved for extreme cruel and inhuman treatment that results in severe pain or suffering. *See* 8 C.F.R. § 1208.18(a). Indeed, harm far more extreme and severe than what Petitioner allegedly suffered has been held by this court to fall below the high threshold for torture. *See, e.g.*, *Vitug v. Holder*, 723 F.3d 1056, 1066 (9th Cir. 2013) (concluding that physical beatings and economic deprivation did not rise to the level of torture); *Ahmed v. Keisler*, 504 F.3d 1183, 1201 (9th Cir. 2007) (concluding that petitioner being taken into custody, beaten four times, and witnessing the murder of his uncle did not justify CAT relief); *Kumar v. Gonzales*, 444 F.3d 1043, 1055 (9th Cir. 2006) (concluding that "a month-long detention that included severe physical attacks and threats to [the petitioner's] life" did not justify CAT relief).

### b. Contextual and Country Conditions Evidence

Even if the BIA had ignored the relocation possibility, substantial evidence supports the agency's decision. The record still would not compel the conclusion that Petitioner established a more than 50% chance of future torture because Petitioner has not provided any evidence that someone in his circumstance is more likely than not to be

kidnapped and mistreated.   There is no evidence, for example, that over half of the people waiting in border towns to enter the U.S. illegally end up getting tortured or worse, which is what Petitioner's generalized evidence would need to show to warrant CAT relief.

The remaining CAT factors, including the country conditions evidence and other relevant context, all undercut Petitioner's belief that he faces the extremely high threshold of future torture required by statute.  The agency emphasized the context surrounding Petitioner's kidnappings, which occurred near the border, in an area with notoriously higher rates of crime, where he voluntarily chose to stay as he searched for a smuggler to bring him illegally across the border in violation of a prior removal order.

The country conditions evidence confirms this important context: Tijuana is an especially dangerous part of Mexico with higher rates of crime, including the kidnapping and extortion schemes that Petitioner claims to have suffered.[7] But to qualify for CAT relief, Petitioner had to demonstrate that he, *in particular*, would more likely than not face torture with government consent or acquiescence upon his return to Mexico.   8 C.F.R. § 1208.16(c)(2); *Zheng v. Holder*, 644 F.3d 829, 835–36 (9th Cir. 2011) (rejecting torture claim where "claims of possible torture remain speculative"); *Dawson*, 998 F.3d at 885 (country conditions evidence showing generalized violence did not compel a conclusion

---

[7] The emphasis on Tijuana in the country conditions evidence offered by Petitioner only bolsters the agency's determination that any risk of torture he may face is highly concentrated in this border area, which Petitioner could avoid simply by not returning to that area.

that the petitioner herself would more likely than not be subjected to such violence).

Here, the country conditions evidence acknowledged crime and police corruption in Mexico generally, as well as higher rates in Tijuana.  But the evidence fails to show that Petitioner faces a particularized, ongoing risk of future torture.  *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (per curiam).  After being kidnapped twice, Petitioner may understandably have a fear of being kidnapped a third time, but the previous kidnappings alone do not make a third kidnapping any more likely.  Petitioner offered no evidence to show that he faces any particularized risk of torture (or kidnapping or extortion) higher than that faced by all Mexican citizens.

Additionally, as the BIA pointed out, "the record evidence does not show that anyone has sought him or has any interest in him since the two kidnappings in Tijuana." With no evidence of threats or harm since Petitioner was kidnapped more than ten years ago, the record certainly does not *compel* the conclusion that Petitioner faces any ongoing or particularized threat of torture.  The absence of any threats after Petitioner's kidnappings also lends further credence to the relocation factor because with no ongoing interest in him, Petitioner can safely relocate.  *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1029 (9th Cir. 2019) ("There is no evidence or claim that the [kidnappers] have sought the respondent since he left his hometown or that he could not safely relocate . . . .").

The record does not compel what Petitioner failed to prove: that if returned to Mexico it is more likely than not that he would be tortured with government consent or acquiescence.  Accordingly the agency did not err in concluding that Petitioner is not eligible for CAT relief.  *See*

8 C.F.R. § 1208.16(c)(2); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam) (determining that generalized evidence of violence and crime in Mexico was not particular to petitioners and therefore was insufficient to establish CAT eligibility); *Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1230 (9th Cir. 2016) ("Where Petitioners have not shown they are any more likely to be victims of violence and crimes than the populace as a whole in Mexico, they have failed to carry their burden [under CAT].").

## V.  CONCLUSION

Because the agency neither abused its discretion in denying Petitioner's motion to reopen and remand, nor erred in denying Petitioner's CAT claim, the petition for review is **DENIED**.[8]

---

[8] Petitioner's motion for stay of deportation is also **DENIED**.