**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 25 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIO HUMBERTO RIVERA, | No. 21-1336 |
| Petitioner, | Agency No. A094-303-009 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 21, 2023[**]
San Francisco, California

Before: SCHROEDER, CALLAHAN, and BUMATAY, Circuit Judges.

Mario Humberto Rivera, a citizen and national of El Salvador, petitions for

review of the Board of Immigration Appeals ("BIA") decision affirming the

Immigration Judge's ("IJ") denial of his claims for asylum, withholding of removal,

and relief under the Convention Against Torture ("CAT"). We review the denial of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

asylum, withholding of removal, and CAT claims for substantial evidence, and "must uphold the agency determination unless the evidence compels a contrary decision." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

1. Substantial evidence supports the agency's conclusion that Rivera was competent to participate in immigration proceedings. *See generally Matter of M-A-M*, 25 I. & N. Dec. 474, 479–80 (B.I.A. 2011); *Salgado v. Sessions*, 889 F.3d 982, 987–89 (9th Cir. 2018). Despite his recent car crash and reported memory problems, the record indicates that Rivera was able to fully understand and follow the proceedings. And "even though safeguards are only required when an IJ concludes an applicant is incompetent," *Salgado*, 889 F.3d at 988, the IJ ensured Rivera had the types of safeguards contemplated in *M-A-M*, such as access to counsel. *M-A-M*, 25 I. & N. Dec. at 481–83. Indeed, his counsel stated it was unnecessary to revisit Rivera's direct examination, and the government stated that his lack of memory about specific dates did not matter, as no claims relied on precise date determinations. "[F]orgetting things and having bad memory" do not establish mental incompetency. *Salgado*, 889 F.3d at 988.

2. Substantial evidence also supports the denial of asylum and withholding of

removal.[1]  *See Davila v. Barr*, 968 F.3d 1136, 1142 (9th Cir. 2020) ("An applicant who fails to satisfy the lower standard for asylum necessarily fails to satisfy the more demanding standard for withholding of removal.").  Both claims depend on a finding that Rivera faced past persecution, and that he was harmed or threatened with harm on account of a protected ground, such as being a member of a particular social group.  *See Plancarte Sauceda v. Garland*, 23 F.4th 824, 833 (9th Cir. 2022).

First, substantial evidence supports the agency's determination that Rivera did not suffer harm rising to the level of past persecution.  Rivera testified that in 1995, the MS-13 gang attempted to recruit him.  Although the gang members did not say so, Rivera believes they were recruiting him because he had military training.  He was given two options: join or pay a monthly extortion fee under threat against his family.  After declining the invitation, Rivera moved from San Vincente to San Salvador to seek work so he could pay the fee.  The gang didn't contact him again but sent notes to his sister asking for his whereabouts and set fire to her kitchen to intimidate the family.  Rivera left El Salvador for the United States in 1998.  He testified that once the gang learned he was in the United States, they increased the fee to $300 per month and threw rocks at his home in El Salvador.  He has paid the

---

[1] Because the BIA affirmed the IJ's decision regarding Rivera's asylum and withholding claims, it did not reach the issue of Rivera's one-year deadline to file an application for asylum.  Likewise, since we only consider the grounds relied upon by the BIA, whether Rivera's application was timely falls outside the scope of our review.  *See Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020).

3

fee for 18 years, but fears that he won't be able to afford it if returned to El Salvador and that he would be harmed or killed as a result by MS-13.

The record does not compel the conclusion that these threats rose to the level of past persecution. *See Gu v. Gonzales*, 454 F.3d 1014, 1019 (9th Cir. 2006) (persecution is "an extreme concept" that does not encompass all negative treatment that society may regard as "offensive"). Rivera suffered unfulfilled threats and extortion demands, but no physical harm. And his circumstances, while serious, involve less physical harm than circumstances that still did not compel a finding of past persecution. *See, e.g.*, *Gu*, 454 F.3d at 1019–21 (brief detention, beating, and interrogation); *Prasad v. INS*, 47 F.3d 336, 339–40 (9th Cir. 1995) (detention and beating). And without a finding of past persecution, Rivera is not entitled to a presumption of future persecution, *see* 8 C.F.R. § 1208.13(b)(1), and he failed to provide any other evidence that he would be subject to future persecution.

Second, substantial evidence supports the agency's determination that Rivera failed to establish a nexus to a protected ground. On the one hand, Rivera testified that he believed he was recruited because of his military experience. On the other hand, he fears returning to El Salvador because he won't have a way to pay the monthly extortion fee, and as a result, MS-13 will harm him and his family. He testified that MS-13 would "always try and recruit people" in his community, and that many people there faced similar threats, extortion, and harm. This record does

4

not compel a finding that Rivera will be persecuted *on account* of a protected class. And Rivera's fear of "random violence by gang members bears no nexus to a protected ground." *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010).

And third, substantial evidence supports the IJ's determinations that Rivera failed to identify a proposed particular social group in which he claims membership, and that the group he insinuated—"former military, with skills to further criminal activity"—was not cognizable. Rivera did not clearly define the proposed social group during his proceedings before the IJ, but the IJ nonetheless considered whether it was cognizable. To be cognizable, a proposed social group must exist independently of harm and risk of being persecuted. *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1077 (9th Cir. 2020). We have previously rejected similar proposed social groups, suggesting that substantial evidence supported the BIA's conclusions that these groups lacked particularity and social distinction. *See, e.g.*, *Arriaga-Barrientos v. INS*, 937 F.2d 411, 414 (9th Cir. 1991) (rejecting group based on former military service); *Ramos-Lopez v. Holder*, 563 F.3d 855, 862 (9th Cir. 2009), *abrogated on other grounds*, *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1093 (9th Cir. 2013) (rejecting group of young men recruited by MS-13 who refused to join). And without a cognizable group, Rivera cannot demonstrate that he would be

5

persecuted on account of his membership in it.[2]

3. Substantial evidence supports the denial of CAT protection because Rivera failed to show it is more likely than not he will be tortured by or with the consent of the government if returned to El Salvador. *See Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 704 (9th Cir. 2022). Nothing in the record compels a finding that Rivera has suffered torture or is likely to if returned. Rivera's family continues to live there without harm, and Rivera provided no evidence that he could not relocate within El Salvador. *See Singh v. Whitaker*, 914 F.3d 654, 663 (9th Cir. 2019) (lack of past torture and evidence about safe internal relocation are "[r]elevant considerations").

**PETITION DENIED.**

---

[2] Rivera correctly points out that the IJ cited a now-abrogated BIA decision in its decision. But in affirming the IJ's decision, the BIA specifically stated that it did not rely on the vacated decision. Instead, the BIA relied on *Zetino*, 622 F.3d at 1016. Additionally, the agency's reference to *Matter of A-B-*, 27 I&N Dec. 316 (AG 2018), for the proposition that "[s]ocial groups defined by their vulnerability to private criminal activity likely lack the particularity required" does not require remand because the BIA applied pre-*A-B-* precedent in determining whether his class was cognizable.