**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| Odilio Escobar-Bamaca,<br><br>Petitioner,<br><br>v.<br><br>Merrick B. Garland, U.S. Attorney General,<br><br>Respondent. | No. 22-485<br><br>Agency No.<br>A213-612-142<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 21, 2023**
Pasadena, California

Before: WARDLAW and KOH, Circuit Judges, and McMAHON, District
Judge.***

Odilio Escobar-Bamaca ("Escobar-Bamaca"), a native and citizen of

Guatemala, petitions for review of an order of the Board of Immigration

Appeals ("BIA") affirming the decision of an Immigration Judge ("IJ") denying

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Colleen McMahon, United States District Judge for the Southern District of New York, sitting by designation.

his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), as well as the BIA's order denying his motion to reopen. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1.      Substantial evidence supports the BIA's determination that Escobar-Bamaca failed to demonstrate eligibility for asylum.[1] An applicant "bears the burden of proving eligibility for asylum and must demonstrate that he has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019); *see also* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a). Escobar-Bamaca alleges that he has suffered past persecution and has a well-founded fear of future persecution based on his membership in two proposed particular social groups: "Guatemalan men perceived to have COVID and returning to Guatemala" and "Guatemalan men who support the Venado political party."

The BIA correctly determined that the proposed particular social group of "Guatemalan men perceived to have COVID and returning to Guatemala" was

---

[1] Although the IJ found that Escobar-Bamaca was ineligible for asylum because his application was time-barred, the BIA "assum[ed] *arguendo* that the respondent was not precluded from pursuing his asylum claim" and held that Escobar-Bamaca did not carry his burden of establishing eligibility for asylum. While Escobar-Bamaca continues to raise arguments regarding the timeliness of his asylum application, we need not reach the question because we affirm the BIA's merits determination that Escobar-Bamaca is ineligible for asylum.

2

not cognizable under the Immigration and Nationality Act. As Escobar-Bamaca presumably no longer has COVID—and a significant percentage of the world's population has now been infected with COVID—this proposed social group is not "(1) composed of members who share a common immutable characteristic, (2) defined with particularity," or "(3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 251–52 (BIA 2014).

Assuming, as the BIA did, that "Guatemalan men who support the Venado political party" is a cognizable particular social group, substantial evidence supports the agency's determination that the harm suffered by Escobar-Bamaca did not rise to the level of past persecution. When evaluating past persecution, we consider the "cumulative effect of all the incidents a petitioner has suffered" and ask whether "the treatment [he] received rises to the level of persecution." *Korablina v. INS*, 158 F.3d 1038, 1043–44 (9th Cir. 1998). Here, Escobar-Bamaca testified that he received a veiled threat from a man named Gerardo at a soccer game in 1995, after which he fled to the mountains to work and bring food home to his family. He remained in Guatemala, unharmed, for three years until he arrived in the United States. While Escobar-Bamaca believes that his brother-in-law was murdered by Gerardo in 1998, it appears that killing was a case of mistaken identity and unrelated to Escobar-Bamaca. Escobar-Bamaca heard nothing further from Gerardo until after he left the country in 1998, when he testified that his family told him Gerardo surrounded his house and asked about him. Viewing the

3

record as a whole, Gerardo's threats and inquires do not rise to the level of persecution.

The record likewise does not compel a finding that Escobar-Bamaca had an "objectively reasonable" fear of future persecution. Escobar-Bamaca was last threatened by Gerardo in 1995, and there is no evidence in the record that Gerardo has ever sought to discern Escobar-Bamaca's whereabouts after 1998 or that he continues to threaten Escobar-Bamaca's safety. *See Gu v. Gonzales*, 454 F.3d 1014, 1021–22 (9th Cir. 2006) (rejecting a well-founded fear of future persecution where the record was "devoid of any evidence" that the alleged persecutors had any continuing interest in the petitioner). Escobar-Bamaca's country conditions evidence demonstrates that Guatemala has a general problem with gang-related violence, but not that Escobar-Bamaca personally is likely to face persecution if he returned to Guatemala. *See Lata v. INS*, 204 F.3d 1241, 1245 (9th Cir. 2000). Escobar-Bamaca additionally failed to demonstrate that he could not "avoid persecution by relocating to another part of" Guatemala. 8 C.F.R. § 1208.13(b)(2)(ii).

Finally, substantial evidence supports the agency's denial of Escobar-Bamaca's asylum application because he failed to show the Guatemalan government is "unable or unwilling" to protect him from future persecution. *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010). While Escobar-Bamaca testified that he believes the Guatemalan police are "powerless," he never contacted the police to report the threats or fears. And the record

4

indicates that the Guatemalan police *did* respond to the killing of Escobar-Bamaca's brother-in-law in 1998.

2. Because Escobar-Bamaca cannot meet his burden of proof of demonstrating past persecution or a well-founded fear of future persecution for his asylum claim, he also fails to meet the "more stringent" standard of establishing "an independent showing of clear probability of future persecution" for withholding of removal. *Tamang v. Holder*, 598 F.3d 1083, 1091 (9th Cir. 2010). Substantial evidence therefore supports the BIA's denial of withholding of removal.

3. Substantial evidence supports the BIA's determination that Escobar-Bamaca did not establish eligibility for CAT protection. In order to qualify for CAT protection, a noncitizen must show "that it is more likely than not that he will be tortured upon removal, and that the torture will be inflicted at the instigation of, or with the consent or acquiescence of, the government." *Arteaga v. Mukasey*, 511 F.3d 940, 948 (9th Cir. 2007). "Torture" is "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). The record does not compel the conclusion that Gerardo's threats and inquiries rose to the level of torture, *see Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 706 (9th Cir. 2022) (collecting cases), and Escobar-Bamaca presents no evidence that the Guatemalan government acquiesced to them.

4.     Finally, the BIA did not abuse its discretion in denying Escobar-Bamaca's motion to reopen proceedings, which was filed as a motion to reconsider.  Escobar-Bamaca's motion was predicated, in part, on a report noting an increase in gang-related violence in Guatemala in 2020.  Escobar-Bamaca's evidence does not meet his "heavy burden" to demonstrate that the new evidence would likely change the result in the case, *see Matter of Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992) (citation omitted), as his "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground." *Flores-Vega v. Barr*, 932 F.3d 878, 887 (9th Cir. 2019) (quoting *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010)).

**PETITION DENIED.**[2]

---

[2] We deny Escobar-Bamaca's motion to stay removal (Dkt. 2) as moot.  The temporary stay of removal remains in place until the mandate issues.