NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 27 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FRANKLIN ENOC RODRIGUEZ-
SANTAMARIA; MORENA ABIGAIL
TORRES-HERNANDEZ; MAYERLI
ESTEFANI RODRIGUEZ-TORRES,

Petitioners,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 24-389

Agency Nos.
A220-808-064
A220-808-065
A220-808-066

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 20, 2025**
Seattle, Washington

Before: McKEOWN, PAEZ, and DESAI, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ.

Franklin Enoc Rodriguez-Santamaria ("Rodriguez-Santamaria"), his partner,

and their minor daughter (collectively, "petitioners") petition for review of an order

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

by the Board of Immigration Appeals ("BIA") dismissing their appeal from an Immigration Judge's denial of their claims for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We review the BIA's denials of asylum, withholding of removal, and CAT protection for substantial evidence. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014). We deny the petition.

Petitioners, natives and citizens of El Salvador, entered the United States after gang members threatened, beat, and targeted Rodriguez-Santamaria for payment of money. During one encounter, gang members threatened Rodriguez-Santamaria for his boss's failure to pay the gang's extortion demands. During another encounter, members from a different gang hit Rodriguez-Santamaria, and threatened to kill Rodriguez-Santamaria and his partner if he did not pay the gang. The BIA denied petitioners' asylum and withholding claims because they failed to establish a nexus between the harm and a protected ground and denied petitioners' CAT claim because they failed to show government acquiescence.

1.      Relief for asylum and withholding of removal require a nexus between harm (past or future) and a statutorily protected ground. 8 U.S.C. § 1158(b)(1)(B)(i); 8 U.S.C. § 1231(b)(3)(A). If a petitioner fails to show a nexus, then the petitioner's asylum and withholding claims both fail. *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1018 (9th Cir. 2023).

Here, substantial evidence supports the agency's conclusion that petitioners did not demonstrate a nexus between the harm and a protected ground. The record does not compel the conclusion that the gang members were motivated by Rodriguez-Santamaria's membership in any particular social group. Rather, the record supports the conclusion that the gang members' motive was solely financial. *See id.* at 1019–22 (explaining why extortion motivated solely by economic reasons does not give rise to a sufficient nexus); *see also Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (stating that a noncitizen's "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground").

Rodriguez-Santamaria's partner and child separately argue that the agency erred by failing to analyze whether their alleged persecution bore a nexus to a particular social group of family membership. Although Rodriguez-Santamaria's partner and child allege they were targeted because of their relationship to Rodriguez-Santamaria, the gang members' sole proffered motivation to threaten them was to extort money from Rodriguez-Santamaria. This economic motivation does not compel the finding that the gang members' threat was due to their membership in a family social group. *See Rodriguez-Zuniga*, 69 F.4th at 1019 ("Where the record indicates that the persecutor's actual motivation for threatening a person is to extort money from a third person, the record does not compel finding

that the persecutor threatened the target because of a protected characteristic such as family relation."). Looking to the future, if Rodriguez-Santamaria is no longer a target for extortion, there is no indication that Rodriguez-Santamaria's partner and child will face persecution.

2. To establish entitlement to CAT relief, a petitioner must show that it is more likely than not that he will face torture by or with the acquiescence of the government. *De Leon v. Garland*, 51 F.4th 992, 1000 (9th Cir. 2022).

Petitioners primarily rely on a country conditions report for their assertion that they have a greater than 50 percent chance of future torture. Although "a CAT applicant may satisfy his burden with evidence of country conditions alone," *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010), petitioners' evidence does not compel the conclusion that they will more likely than not face torture by or with the acquiescence of the government upon returning to El Salvador. *See Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 706–07 (9th Cir. 2022) (denying petition for review because country conditions evidence acknowledging "crime and police corruption in Mexico generally" did not demonstrate that the petitioner faced a "particularized, ongoing risk of future torture"). Even if the gang members' threats amounted to past torture, the record here does not show petitioners face a particularized threat of future torture with the acquiescence of a public official. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) ("[A] petitioner must

demonstrate that he would be subject to a particularized threat of torture, and that such torture would be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." (citation modified)). Petitioners made no attempts to report the gang violence and threats they faced previously, and there is no evidence or claim that the gang members have sought them or have any continuing interest in them since leaving El Salvador. Substantial evidence thus supports the denial of petitioners' CAT claim.

The petition for review is **DENIED.**

*Rodriguez-Santamaria, et al. v. Bondi*, No. 24-389

PAEZ, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's disposition of Rodriguez-Santamaria's claims for asylum and withholding of removal, but I respectfully dissent from the majority's decision to uphold the agency's denial of protection under the Convention Against Torture ("CAT").

A CAT applicant must make two showings: first, that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal," 8 C.F.R. § 208.16(c)(2); second, that such torture will be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1). Because the Immigration Judge ("IJ") found Rodriguez-Santamaria "credible and truthful," "the facts to which [he] testified are 'deemed true, and the question remaining to be answered becomes whether these facts, and their reasonable inferences, satisfy the elements of the claim for relief.'" *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011) (alteration in original) (quoting *Edu v. Holder*, 624 F.3d 1137, 1142 (9th Cir. 2010)). In my view, the agency erred in its disposition of both elements of Rodriguez-Santamaria's CAT claim.

**1.** As to the first issue, the agency erred in its analysis of past torture, adversely affecting its assessment of the likelihood of future torture. As I see it, the evidence

compels the conclusion that Rodriguez-Santamaria was tortured in the past. The dispositive consideration is the cruel and graphic nature of the threat Rodriguez-Santamaria received and his ensuing mental anguish.

A cruel, graphic threat may constitute torture. The definition of "torture" includes "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1). "[M]ental pain or suffering" that amounts to "prolonged mental harm" may constitute torture when it is caused by, among other things, "[t]he threat of imminent death" or "[t]he threat that another person will imminently be subjected to death, severe physical pain or suffering." 8 C.F.R. § 1208.18(a)(4).

Here, gang members found Rodriguez-Santamaria in a public park with his family and forced him, at gun point, to enter a parked car where they beat him. After Rodriguez-Santamaria could not pay the money they demanded,

> the leader of the gang said that if you don't give us the $2000 extortion money they were asking of you, I give you a week to give us that money. And then if not, *you're going to see with your own eyes how I pull the womb out of the mother, and you'll have to witness when I cut the baby into 13 pieces*.

Rodriguez-Santamaria's declaration further provides that the gang threatened to "make [him] watch before killing [him] as well." His wife was eight months pregnant at the time. And Petitioners fled El Salvador just four days after this

2

encounter.  Rodriguez-Santamaria broke down on the witness stand when recounting the threat and the court adjourned for a break to allow him to recover.

This was torture.  If threatening to pull your unborn child from your wife's womb and cut it into thirteen pieces in front of you does not amount to the intentional infliction of severe "mental pain or suffering"—while tied up and beaten, after multiple other threats and demands for payment—it is difficult to imagine what does. 8 C.F.R. § 1208.18(a)(4).  And Rodriguez-Santamaria's testimony evinces his "prolonged mental harm," *id.*, setting his case apart from other CAT cases based primarily on threats.

The majority appears to assume that Rodriguez-Santamaria was tortured in the past but holds that Petitioners have not shown a particularized threat of future torture.  The majority offers two justifications for this conclusion, but the first is not determinative, and the second is incorrect.  As noted above, Rodriguez-Santamaria credibly testified that if Petitioners were removed to El Salvador, the gang would find out "the same day" and "once they knew that I was back in my country, they'd find me, and they would do to me what they said they were going to do."  Given Rodriguez-Santamaria's credible testimony, I cannot agree with the majority that there is "no evidence" of the gang's continuing interest in Petitioners.  And even if it were true, it would be irrelevant.  If Rodriguez-Santamaria was tortured in the past, our precedents hold that we then assume, absent individualized changed

3

circumstances, that "it is likely that he will be tortured again." *Nuru v. Gonzales*, 404 F.3d 1207, 1217–18 (9th Cir. 2005). The majority's reasoning thus improperly places the burden on Rodriguez-Santamaria.

Because the IJ erred in concluding that Petitioners were not tortured in the past, and because past torture is the "principal factor" in assessing whether a CAT applicant is likely to be tortured again, *id.* at 1218, I would thus remand for the agency to reconsider its analysis of the likelihood of future torture.

**2.** As to the second critical prong of Rodriguez-Santamaria's CAT claim— whether his torture was by or with the consent or acquiescence of government officials—the agency's analysis was void of reasoning and thus constituted legal error. The IJ acknowledged country conditions evidence of corruption and cooperation between the government and gangs, and then—without explaining why that evidence of corruption was either insufficient or unpersuasive—the IJ simply found that there was "just nothing to show in this case, and even in the country condition evidence noted by the court, that the government of El Salvador would fail to protect the respondents from these gang members should they ever be tortured." And the Board of Immigration Appeals added no analysis explaining why the relevant evidence was insufficient or unpersuasive. This absence of reasoning "does not 'provide an adequate basis for this court to conduct its review.'" *Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013) (quoting *Castillo v. INS*, 951 F.2d 1117,

4

1121 (9th Cir. 1991)) (reversing and remanding on CAT claim where the agency concluded there was no state action or acquiescence "[w]ithout analysis").

This lack of reasoning, in my view, is a serious error given that the country conditions evidence likely compels the conclusion that a public official would acquiesce in Petitioners' torture. The bar here is relatively low. From where we sit, the evidence need only compel the conclusion that "a public official," not the entire government, "[is] aware that torture of the sort feared by the applicant occurs and remain[s] willfully blind to it." *Madrigal*, 716 F.3d at 509 (quoting 8 C.F.R. § 208.18(a)(1)). Or, that the official "simply stood by because of their inability or unwillingness to oppose it." *Cole*, 659 F.3d at 771 (quoting *Bromfield v. Mukasey*, 543 F.3d 1071, 1079 (9th Cir. 2008)).

That low bar is met here. There is record evidence that the President of El Salvador, Nayib Bukele, negotiated with gangs over a period of years—including MS-13, the gang that threatened and beat Rodriguez-Santamaria—about reducing violence before elections to boost his chances at reelection, implying acquiescence in gang violence outside of pre-election windows. The President's staff later deleted the records of these negotiations. This record evidence, alongside reports that President Bukele's government has been generally ineffective at controlling gang violence, likely compels the conclusion that El Salvador has turned a willful blind

eye to gang violence of the sort that Petitioners would likely experience upon their return.[1]

Even if the evidence does not independently compel the conclusion that El Salvador officials would acquiesce in Petitioners' torture, it at least merits reasoned discussion. The agency was "require[d]" to "examin[e] the efficacy of the government's efforts to stop the drug cartels' violence, and . . . the degree of corruption that exists in [El Salvador's] government." *Madrigal*, 716 F.3d at 509. And "country conditions alone can 'play a decisive role in granting [CAT] relief.'" *Nuru*, 404 F.3d at 1219 (quoting *Kamalthas v. INS*, 251 F.3d 1279 (9th Cir. 2001)). In light of the required analyses, and the "potentially dispositive" nature of the country reports detailing corruption and government inefficacy in controlling gangs, the IJ's "catchall phrase" waiving the evidence away "does not suffice, and the decision cannot stand." *Cole*, 659 F.3d at 772.

For all of the above reasons, I would grant the petition and remand for further consideration of Rodriguez-Santamaria's CAT claim.

---

[1]    Our cases go to great lengths to emphasize that the acquiescence of low-level government officials is sufficient, and that it would be unrealistic to require CAT applicants to demonstrate the acquiescence of high-level officials like "the nation's president." *Madrigal*, 716 F.3d at 510 (quoting *Ramirez-Peyro v. Holder*, 574 F.3d 893, 901 (8th Cir. 2009)). Here, Petitioners have made the higher showing.